NEW-YORK,<br>Nov. 1810.<br><br>TILLOTSON<br>v.<br>PRESTON.

Judgment for the plaintiff.

——◦❀◦——

TILLOTSON *against* PRESTON.

THIS was an action of trespass *quare clausum fregit*, for entering the plaintiff's close in *Hancock*, in the county of *Delaware*, and cutting and carrying away timber. The cause was tried at the *Delaware* circuit, the 12th of *June*, 1810, before Mr. Justice *Thompson*.

At the trial, the plaintiff proved property and possession of the land, and that divers persons, under and by command of the defendant, entered, and cut and carried away timber, in the years 1805, 1806, and 1807.

The defendant gave in evidence a letter from the plaintiff to the defendant, dated 27th *March*, 1804, in which the plaintiff says, " I will consent to your taking my timber upon the terms proposed in yours, &c. but

Where *A.*, the owner of land, wrote a letter dated the 27th of *March*, 1804, to *B.*, saying, " I will consent to your taking my timber upon the terms proposed in your letter, but restricting you to that which has been injured by fire, in the first place, and preferring that you should begin between *Baxter's* lot and the creek," &c. and on the 31st of *March*, 1806, he executed a pow-

er of attorney to *C.*, with authority to revoke the permission given to *B.*, and which, on the 6th *July*, 1806, was shown to *B* , who was forbidden to cut any more timber. It was held, that the letter from *A.* to *B.* amounted to a mere license to cut timber, which was revocable; and that *B.* was liable in an action of trespass for all the timber cut by him after notice of the revocation; and that if the letter was founded on any propositions of the defendant, so as to make a contract, so as to justify the trespass, it was incumbent on the defendant to show such propositions.

restricting you to that which has been injured by fire in the first place; and preferring that you should begin between *Baxter's* lot and the creek, and put this thing under the superintendance of a person in whom you can confide, &c. otherwise I may not know the exact quantity taken off for market, for our joint concern." The defendant then proved that the timber cut was injured by fire, and was situated between *Baxter's* lot and the creek.

The plaintiff then offered in evidence a power of attorney from him to *Ebenezer Foot*, dated the 31st of *March*, 1806, and which contained authority to revoke the power given by the plaintiff to the defendant, and with power of substitution. A power of substitution was executed by *Foot* to *Jonas Lakin*, the 6th *April*, 1806; and the plaintiff proved by *Lakin*, that, on the 6th *July*, 1806, he showed the defendant the power of substitution, and a letter from *Foot*, and forbade the defendant to enter the lot, and that he must cease to act. The defendant said he should not, and did not know *Foot* or *Lakin*. The plaintiff then produced a letter to him from the defendant, dated the 5th of *July*, 1806, in which he acknowledged that *Lakin* had showed him a copy of the power of attorney to *Foot*, and the substitution to *Lakin*, &c. The plaintiff also proved, that, in 1807, timber was cut, under the direction of the defendant.

The defendant produced in evidence an agreement in writing, dated the 1st of *March*, 1806, and signed by him and *F.* and *J. Wheeler*. The defendant stated himself to act as agent for the plaintiff, and allowed them to cut and carry off the injured timber, &c.

The plaintiff abandoned any claim for damages, except for one raft cut by *F.* and *J. Wheeler*, in 1807, and notice of the revocation. The judge thought that the contract in the plaintiff's letter was irrevocable; but advised a verdict, subject to the opinion of the court. A verdict

was accordingly taken for the plaintiff for 45 dollars, damages.

*Sudam*, for the plaintiff. 1. The letter from the plaintiff to the defendant was a mere license or authority to enter on the land for a certain purpose. It was to be exercised for the benefit of both parties. It will be said that the defendant had an interest in the land, which could not be devested. But admitting it to be a contract, it is void under the 11th section of the act for the prevention of frauds. The letter of the plaintiff is not a sufficient memorandum within the statute. It does not contain any of the terms of an agreement of sale.* It is void for uncertainty. It is such an agreement as could never be enforced.†

The sale of growing timber is an interest in land within the 4th section of the statute of 29 *Car*. II. c. 3. corresponding with the 11th section of our act.‡ (24th sess. c. 44.) But the language of the parties clearly shows, that the defendant was a mere agent, and was to execute a trust for the benefit of the plaintiff. His power was revocable.

*Van Vechten*, Attorney-General, and *Sherwood*, contra. The letter of the plaintiff to the defendant was an agreement, and, as such, irrevocable. If it was defective in any respect, it might be supplied by other proof at the trial. Admitting, however, that it was a power, yet it was a power coupled with an interest, and could not be revoked. The defendant had acted under this power, and had entered into a contract with the *Wheelers*, by virtue of that authority; and it cannot be revoked to the prejudice of this contract. The defendant was to sell the timber for the joint benefit of the plaintiff and himself. As the extent of the interest of each party does not appear, it must be presumed to be equal; and that the profits arising from the sale of the timber were to be

* 2 *Bos. & Pull.*
238.
† *Prec. in Ch.*
560. 1 *Atk.* 12.
6 *Bro. P. C.* 45.
1 *Str.* 426. 1 *P.*
*Wms.* 618.

‡ 6 *East,* 502.

NEW-YORK,
Nov. 1810.

TILLOTSON
v.
PRESTON.

equally divided between them. The power was to continue until the timber, which was the subject matter, was sold and converted into money.

The defendant does not attempt to enforce a contract against the plaintiff. He merely offers it as a defence against the charge of being a trespasser. He is not bound, therefore, to show the precise terms of the contract. If the plaintiff has any other paper or evidence to show that the defendant was a trespasser, he ought to produce it. The defendant has shown enough, *prima facie*, to support his defence.

Again, it is admitted that the timber sold prior to 1807 was within the authority given to the defendant; but the timber taken in 1807 was under the contract in 1806, which was made in execution of the power. The revocation could not extend to contracts previously made under the power.

Again, there was not legal notice to the defendant of the revocation. The power given to *Foot* was not, of itself, a revocation of the power to the defendant. The revocation ought to have been communicated to the defendant in a more authentic manner.

If the letter contains the terms of the agreement, or refers to another paper which contains the terms, it is sufficient. Lord *Thurlow*, in the case of *Tawney* v. *Crowther*,\* was of opinion, that if a letter refers so clearly to an agreement as to show what was meant by the parties, where the existence of the paper is proved by parol, it will take the case out of the statute.

\* 1 *Bro. C. C.* 318.

*E. Williams*, in reply. The case of *Crosby* v. *Wadsworth*† shows that a sale of growing timber is within the statute of frauds, it being an interest in or concerning the land. If the defendant relies on a contract as a justification, it is incumbent on him to produce such contract; and if there was another letter or paper in the possession of the plaintiff, which was material to show

† 6 *East*, 602. 1 *Comyn on Contracts*, 79.

a complete and valid contract, he ought to have given notice to the plaintiff to produce it at the trial, or have filed a bill of discovery against him. If the contract, as proved at the trial, is essentially defective, and is so vague and uncertain that it could not be enforced, it cannot constitute a valid defence in this action. It cannot be good for one purpose, and bad for another.

This was, in truth, a mere agency on the part of the defendant, who was to dispose of the timber which had fallen, or been injured by fire. In regard to him, the power was always executory and revocable. The language of his letter to the plaintiff, written after the power given to *Foot*, and read at the trial, shows that he considered himself as transacting the business of the plaintiff, and as having an agency or trust. If the authority given to the defendant was revocable, then the power given by the defendant to *F. & J. Wheeler* to take timber must also be revocable. Where an authority is by parol, and a new attorney is appointed, the new power is, *ipso facto*, a revocation of the former authority.

*Per Curiam.* The plaintiff brings trespass for cutting and carrying away timber, in the year 1807; and he shows title, possession, and the trespass committed by direction of the defendant, to the amount of the damages recovered. The cause then turns upon the justification set up by the defendant. The trespass being proved, it lies with the defendant to make out his defence. To do this he produces a letter written to him by the plaintiff in 1804, in which the plaintiff consents to his taking timber upon the terms proposed in a letter of the defendant. To meet the justification set up under this letter, the plaintiff shows a revocation of this permission, duly notified to the defendant, in the summer of 1806, and to which he refuses to conform, but causes the timber in question to be subsequently cut. This

NEW-YORK,
Nov. 1810.

JACKSON
v.
WOOD.

act of the plaintiff, in 1806, does away the force of the permission in 1804, for that letter could not certainly be considered as a permission that was to endure for ever. If the letter was founded upon any proposition of the defendant, so as to form a contract which would justify the trespass, it certainly lay with the defendant, and not with the plaintiff, to show that fact, for it constituted an essential part of the defence. The defendant might have called for the letter; and if the plaintiff did not produce it, he might have proved its contents. It certainly lay with him to make out his justification, and the plaintiff's letter does not of itself do it, when connected with the subsequent revocation of his consent. It would be extravagant and alarming to consider the permission in that letter as being, of itself, and without further proof, irrevocable, and that the defendant might go on without bound or limit. The plaintiff is, therefore, entitled to judgment.

Judgment for the plaintiff.