JOSEPH M. DURYEE, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

Where one provision of an enactment of a legislative body is invalid, and the others valid, the latter are not affected by the void provision, unless they are plainly dependent upon each other, and so inseparably connected that they cannot be divided without defeating the object of the statute.

In December, 1856, the common council of the city of New York passed an ordinance purporting to establish an exterior water line on the East river side of the city, which line was thereby ordained to be a street, called East street, and authorizing and directing the proprietors of lands adjoining or nearest and opposite to East street to make and complete said street, and fill in the space between their properties and said street. The line so established was about two hundred feet east of the lands under water which had been conveyed to the city. In 1857 the legislature established a bulk-head and pier-line about on the line of the lands so conveyed to the city. *Held*, that while the ordinance, so far as it attempted to establish an exterior line, was annulled by said act, and conceding the city had no authority to establish a line beyond the boundary of the property owned by it, yet that the ordinance was a sufficient authorization and consent to the construction of bulk-heads and piers, and the filling up of the lands under water to the line established by the act, to meet the requirements of the limitation in the " sinking fund ordinance " (recognized and approved by the legislature, chap. 225, Laws of 1845), which declares that no grant made by the city by virtue of said ordinance shall authorize the grantee to construct bulk-heads, piers or make land without permission first had from the common council.

In pursuance of the authority conferred upon the city by said ordinance to sell its lands under water, the city in January, 1848, sold and conveyed a tract of such land to the F. L. & I. Co., except that portion thereof designated for streets and avenues. The object of the conveyance, as stated therein, was to enable the grantee to make and gain the land under water, and purported to give immediate possession. The grantee covenanted to build bulk-heads, wharves, avenues and streets, and fill in the same within three months after it was required by the common council, but not until so required, and in case of default in performance of the covenant, the city had the option to do the work at the expense of the grantee, or to re-enter and take possession of the granted premises. The grantee went into possession and proceeded to make the lands contemplated, and with its successors in title continued that work for about twenty years without interference on the part of the city, and under the direction and control of its officers; the streets constructed,

and the wharves and bulk-heads at their termination were taken possession of by the city. The city constructed a temporary sewer in one of the streets crossing the tract, which emptied into the river at the foot of the street. In 1865, the city having obtained a written license to flow the lands from the then owner, constructed a new outlet to the sewer over a portion of the lands so conveyed. The license was for an indefinite time, and was without consideration. Plaintiff, having acquired title, in 1867 revoked the license and proceeded to build bulk-heads along the exterior water line, and to fill in the space between it and the shore line. The Croton Aqueduct board thereupon forbade him from continuing the work, and threatened him with the penalties imposed for an obstruction of a sewer, and plaintiff was subjected to expense and damage, caused by keeping such outlet free from obstruction. In an action to recover damages, *held,* that the license was revocable at the pleasure of the owner; that the deed conveyed an absolute title subject only to be defeated by a breach of the conditions; that the failure of the grantee, and his successors in interest, to comply with the conditions of the deed in respect to the time of filling in, even if it should be regarded as applying to the land between the streets, was not a defense; that the city had a right to waive the condition, and the case shows such a waiver; also that a breach of the condition did not *ipso facto* determine the estate, but only exposed it to be defeated at the election of the grantor to be signified by some act equivalent to a re-entry, and until such act was done plaintiff's rights were unimpaired.

*It seems,* that said condition in the deed and the limitation in the ordinance only apply to the streets and avenues, not to the lands outside of them.

In an action for tort to recover even unliquidated damages the allowance of interest by way of damages is in the discretion of the jury.

Also *held,* that the material deposited by plaintiff upon the lot in question for the purpose of making land became part of the realty, and he had the same right of action for an injury thereto as for a similar injury to the natural land.

(Argued June 4, 1884 ; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 26, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

The case is reported on a former appeal in 62 N. Y. 592.

*Francis Lynde Stetson* for appellant. The plaintiff had no right of action in respect of any interference by the defendant

with the filling placed on the lots without consent of the common council. (26 Hun, 120–130.) An owner of real estate is never put to the alternative of either abandoning its use, or else of occupying it at the peril of waiving his rights respecting the acts of some third person in connection with such property. (*Smith* v. *Brady*, 17 N. Y. 173–189; *Reed* v. *B'd of Education*, 4 Abb. Ct. of App. Dec. 34; *People's Bank* v. *Mitchell*, 73 N. Y. 406–414.) No waiver will be presumed in any case where the act alleged to constitute the waiver is taken without full knowledge of the prior impropriety on the part of the one asserting the waiver. (73 N. Y. 413.) A waiver will not be presumed unless there is a clear intention of waiver. (*People's Bank* v. *Mitchell*, 73 N. Y. 406–413.) The sole authority competent to waive was the common council, and any action of the street commissioner was wholly inconsequential. (26 Hun, 129.) When all the facts and circumstances relating to a subject are admitted, a party has a right to ask the court to inform the jury whether the evidence is sufficient to establish a waiver. (*Spring Garden Mut. Ins. Co.* v. *Evans*, 9 Md. 1.) The authority given by Mr. Tallman to the Croton Aqueduct board, being in writing for a definite period, was irrevocable in advance of the expiration of that definite period. (*Jackson, ex dem. Gooch*, v. *Wood*, 12 Johns. 73; *Warren* v. *Leland*, 2 Barb. 613–618; *Nellis* v. *Munson*, 24 Hun, 575; *Wood* v. *Leadbitter*, 13 M. & W. 838.) The servitude in question not being an estate in lands, having been created by a writing sufficient under the statute of frauds, and being openly in operation, was not to be treated as resting upon a mere personal license. (24 Hun, 575.) The party upon whom is the burden of proving a particular fact must also show the relevancy and competency of the evidence by which he seeks to establish the fact in question. (*Van Buren* v. *Wells*, 19 Wend. 203.) The court erred in refusing to charge that no interest could be allowed except the jury so found. (*Home Insurance Co.* v. *Penn. R. R. Co.*, 11 Hun, 187; *White* v. *Miller*, 71 N. Y. 118; 78 id. 393.)

*F. J. Fithian* for respondent.   The city was liable for damages resulting from acts of the character complained of, provided there were no special matters of defense.   (*Tauchard* v. *Tauchard*, 5 Cal. 306 ; *San Francisco Gun Co.* v. *City of San Francisco*, 9 id. 453 ; *Lacure* v. *Mayor, etc.*, 3 Duer, 406 ; *Hudson* v. *Mayor*, 9 N. Y. 163 ; *Bailey* v. *Mayor, etc.*, 3 Hill, 571 ; *Wendell* v. *Mayor, etc., of N. Y.*, 39 Barb. 329 ; 4 Keyes, 261 ; *Foot* v. *Brownson*, 4 Lans. 49 ; *Borton* v. *City of Syracuse*, 36 N. Y. 54 ; *Rochester W. L. Co.* v. *City of Rochester*, 3 Comst. 463 ; *Brown* v. *Mayor*, 3 Barb. 234 ; *West* v. *Trustees of Brockport*, reported in note to *Hicock* v. *Trustees of Plattsburg*, 16 N. Y. 161 and note ; *Conrad* v. *Trustees of Ithaca*, 16 N. Y. 158 ; *H. T. Co.* v. *City of Buffalo*, 1 Sheld. 537 ; *Bastloch* v. *City of Syracuse*, 8 Hun, 587 ; 72 N. Y. 64 ; *Byrnes* v. *City of Cohoes*, 67 id. 204 ; *Noonan* v. *City of Albany*, 79 N. Y. 470 ; *Ashley* v. *City of Port Huron*, 15 Alb. L. J. 81 ; *Maires* v. *Manhattan R. E. Agency*, 89 N. Y. 498.) The Croton Aqueduct officials are city officers, and the corporation is liable for their wrongful acts in forcibly maintaining a nuisance on plaintiff's property in the interest of and for the benefit of the city.  (*Maximillian* v. *Mayor*, 62 N.Y. 160 ; *Matter of Zbrowski*, 68 id. 88 ; *Conrad* v. *Village of Ithaca*, 15 id. 158 ; *West* v. *Village of Brockport*, id. 161, note.) The written consent obtained by Burns was a mere license revocable at the will of the grantor, or his assignor and grantees. (*Eggleston* v. *N. Y. & H. R. R. Co.*, 35 Barb. 162 ; *Babcock* v. *Utter*, 1 Keyes, 397 ; *Wilkes* v. *Irvin*, 33 Ohio, 138 ; *Selden* v. *D. & H. C. Co.*, 29 N. Y. 934 ; *Ruggles* v. *Le Sure*, 24 Pick. 187 ; *Harris* v. *Gillingham*, 6 N. H. 9 ; *Cook* v. *Stearns*, 11 Mass. 533 ; *Wiseman* v. *Lucksinger*, 84 N. Y. 31.) Conditions and restrictions upon the grantee's right to the full, complete and unrestricted beneficial use and enjoyment of the estate granted or leased under penalty of forfeiture are not favored in law.   They are to be construed strictly against the grantor of the estate, and in furtherance and aid of the grantee's free and full right of use and enjoyment.   (2 Washburn on Real Estate, 7, margin 447 ; *Gadbury* v. *Shepard*, 27

Miss. 203; *Ludlow* v. *H. R. R. Co.*, 11 Barb. 440; *Monifield* v. *Cobleigh*, 4 Cush. 178, 184; *Bradstreet* v. *Clark*, 21 Pick. 389; *Morton* v. *Ballou*, 13 Barb. 119; *Hoyt* v. *Kimball*, 48 N. H. 327; Cruise on Real Property, 4; 2 Washburn, 718; *Taylor* v. *Masons*, 9 Whart. 325–350; *Newkirk* v. *Newkirk*, 2 Caines, 345; *Blackstone* v. *Davis*, 21 Pick. 42; *Grey* v. *Blanchard*, 8 id. 284; *Dampors Case*, 4 Rep. 119; *Dickey* v. *McCullough*, 2 W. & S. 100; *Dakin* v. *Williams*, 17 Wend. 449; *Showan Iron Co.* v. *City of Erie*, 41 Penn. St. 654; 2 Cruise on Real Estate, 11; *Cruse* v. *Ruggbee*, 2 Black, 266.) The "permission" given to plaintiff by the street commissioners to bulk-head· and fill in Thirty-fifth street on the "harbor commissioner's line," was a valid and binding "consent" for that purpose and is fairly within the general powers and authority vested in the street department by the charter and ordinances. (*Dry Dock R. R. Co.* v. *H. R. R. Co.*, 30 How. 39.) When for years a city has acquiesced in acts and accepted improvements to an amount ten times the original value of the lands, done without the condition that no improvement shall be made without "consent," under penalty of forfeiture of the lands being complied with without objection, or any attempt to enforce the condition, it should be held to have waived it and˚ratified the acts. (*Nichol* v. *N. Y. & E. R. R. Co.*, 2 Kern. 121; *Franklin* v. *Erie Ry.*, 53 Barb. 383; *Am. C. Iron Co.* v. *Eisner*, 7 J. & S. 200; *Steiner* v. *Arnold*, 5 Abb. [N. S.] 377; *Morrison* v. *Morrison*, 4 Hun, 410; *Goodwin* v. *Mass. Ins. Co.*, 73 N. Y. 480; *Hadden* v. *Coleman*, id. 567; *Miller* v. *Mayor, etc., of New York*, 53 Barb. 654; *Showan Iron Co.* v. *City of Erie*, 41 Penn. St. 341; 1 Hilliard on Real Estate, chap. 28, § 25, p. 536; *Williard* v. *Henry*, 2 N. H. 120; 2 Washburn on Real Estate, chap. 14, § 20, p. 20; *Murray* v. *Harway*, 56 N. Y. 337; *Short* v. *Home Insurance Co.*, 90 id. 16.) An unauthorized act of an officer of a municipal corporation (not *ultra vires*) may be ratified and made binding by ratification, expressly or impliedly. (1 Dillon on Mun. Corp., §§ 384, 463, and note; 2 Dillon, § 776; *Peterson* v. *Mayor, etc.*, 17 N. Y. 453; Potter

on Corp., §§ 157, 159 ; *Bank of United States* v. *Dandridge*, 4 Wheat. 64 ; *Foster* v. *Essex County B'k*, 17 Mass. 479 ; *B'k of Middlebury* v. *R. R. R. Co.*, 30 Vt. 159 ; *Ryan* v. *Dunlap*, 17 Ill. 40 ; *Robinson* v. *Buell*, 20 Ga. 275 ; *Reuter* v. *Electric Tel. Co.*, 37 E. L. E. 139 ; *R. M. N. B'k* v. *Nevada Gold M. Co.*, 2 Col. 248–256 ; 5 id. 531 ; *P. & B. R. R. Co.* v. *Cornell*, 28 Penn. St. 339 ; *Johnson* v. *Wingate*, 29 Me. 406 ; *Evans* v. *Smallcome*, L. R., 3 E. & I. App. Cas. 249 ; *City of Detroit* v. *Jackson*, 1 Doug. 106 ; *Woodbridge* v. *Prop'rs, etc.*, 6 Vt. 204.) Knowledge or "notice," which comes to an officer or agent of a corporation while engaged in the business of his principal, of acts and things concerning the business in which he is so engaged, or acquired by him under circumstances which make it "his duty" to act upon such knowledge or notice, or communicate it to his principal, is legal notice to the corporation and its governing body. (*Fulton B'k* v. *N. Y. & L. C. Co.*, 4 Paige, 120 ; Angell and Ames on Corporations, §§ 305–308 ; *Pittsburg B'k* v. *Whitehead*, 10 Watts [Penn.], 402 ; *Custer* v. *Tompkins Co. B'k*, 9 Penn. St. 27 ; *Porter* v. *B'k of Rutland*, 19 Vt. 410 ; *Whitehead* v. *Mills*, 29 Ark. 99 ; *Smith* v. *Woodhull*, 113 Mass. 391 ; *Pringles* v. *Dunn*, 37 Wis. 449 ; *Rocky Mt. N. B'k* v. *Union Mining Co.*, 2 Col. 248 ; *Ramnage* v. *Mech's F. Ins. Co.*, 1 Green [N. J.], 110 ; *Toll Bridge* v. *Bosworth*, 30 Conn. 280 ; Angell and Ames on Corporations, §§ 305–306 ; *Mayor of N. Y.* v. *Sheffield*, 4 Wall. [U. S.] 189 ; *Bragg* v. *City of Bangor*, 51 Me. 532 ; *Hart* v. *City of Brooklyn*, 30 Barb. 226 ; *Harrison* v. *City of N. Y.*, 4 Bosw. 497 ; *Merrill* v. *Deering*, 3 N. H. 53 ; *Mersey Docks* v. *Gibbs*, 11 H. of L. Cas. 687, 701 ; 1 H. L. 93 ; Dillon on Corporations [2d ed.], § 1025 and note ; *Nichols* v. *City of Boston*, 98 Mass. 39 ; *Scott* v. *The M. R. R. Co.*, 86 N. Y. 200.) Upon the conceded facts in this case, the defendant is not and never has been in a position successfully to allege in court a breach of the condition in question as a defense to this action. (2 Greenleaf's Cruise on Real Property [1st ed.], 37 m., title 13 ; 1 Washburn on Real Property, 473 [451 m.], 475 [452 m.] ; *Ludlow* v. *N. Y. & H. R. R. Co.*, 12 Barb.

440 ; *Bowen* v. *Bowen,* 18 Conn. 535.) Plaintiff was entitled to interest on damages found by the jury. (*Parrott* v. *Knick. Ice Co.,* 46 N. Y. 361–9 ; *Maires* v. *M. R. E. Assn.,* id. 498.)

RUGER, Ch. J. This action was brought to recover the damages occasioned by an eviction from and injury to the lands of the plaintiff through the alleged unlawful conduct of the defendant, and would, under the former system of pleading, have been denominated an action of trespass on the case. The premises in question were water lots in the East river adjoining the lands between Thirty-fourth and Thirty-sixth streets in the city of New York, and were sold by it for the purpose of filling and using as land for the extension of streets thereon, and the erection of wharves, piers and buildings thereover.

After the original grant of these lands by the city in 1848, the defendant, for the accommodation of the inhabitants of a large section of its territory, constructed a temporary sewer in Thirty-fourth street, which originally emptied into the river at the foot of the street. In 1865, desiring for some purpose to change the location of the outlet, the defendant built a new one, causing it to discharge over the plaintiff's premises through an artificial side-cut, projecting nearly at right angles with the street, and terminating at a point about three hundred feet from the terminus of the street. Before constructing this outlet, license to flow the lands was obtained by the defendant from the plaintiff's grantor, one Geo. F. Tallman. This license was for an indefinite period, and consisted simply of the licensor's written consent to the proposed occupation of the lands for the purpose of a temporary servitude.

In 1867 the plaintiff acquired the title to the lands and proceeded to build bulk-heads on the exterior water line established by the public authorities, and to fill up the spaces intervening between such line and the shore line of the river. This proceeding threatened the obstruction of the outlet of the sewer, and not only a deprivation to the citizens of the benefits secured thereby, but danger to the public health from the want of proper sewerage. Under these circumstances the

Croton Aqueduct board, a legally constituted agency of the defendant for certain purposes (Chap. 446, Laws of 1857; chap. 381, Laws of 1865; *Matter of Zborowski*, 68 N. Y. 90), forbade the plaintiff from using his premises in the manner proposed, and threatened him with the penalties imposed by the city ordinances, upon those obstructing the outlet of any of its sewers. In consequence of this prohibition the plaintiff was not only prevented from filling up his land and enjoying the use thereof, but was also subjected to large expense and damage owing to injuries occasioned by the action of the sewage and the obligation imposed upon him by the defendant of keeeping the outlet free from obstruction. The construction of the side-cut was no part of the general sewerage system of the city, but was adopted as a temporary expedient, and depended altogether for its lawfulness upon the acquiescence of the owner of the property encroached upon, in its construction and use. No consideration was paid by the city for this privilege, and the consent was a mere license, revocable at the pleasure of the owner and conferring no rights which could survive the withdrawal of the authority under which it was constructed. (*Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323.) While it would have been competent for defendant's board of health to take such measures and appropriate such property as might be necessary to protect the health of its inhabitants, the Croton Aqueduct board had no such power, except so far as to enforce the ordinances for the protection of sewer outlets from obstruction. In either case when the exercise of the authority conferred upon these boards required the appropriation of the property of citizens, not forfeited and liable to destruction as a public nuisance, it could be exercised only upon the condition of making compensation to the owners of the property taken.

It is not, however, claimed that plaintiff's property was taken by any of the defendant's agencies in the exercise of power conferred upon them by statutes and ordinances creating such agencies and defining their powers and duties.

The license to the defendant was expressly revoked by the

plaintiff early in 1867, and several months before he commenced filling his lots. Upon being requested to alter the sewer outlet so as to enable the plaintiff to prosecute his work, the defendant claimed the right, under the license from Tallman, to occupy the land for its outlet, until it should construct and complete a permanent sewer under a general plan which had previously been adopted pursuant to law, for the drainage of that portion of the city, through First avenue and Thirty-third street. In defiance of this revocation the defendant continued not only to discharge the sewer upon plaintiff's premises but forbade and by constructive force prevented him, for about two years, from filling up his lots and deriving the benefit therefrom to which he was lawfully entitled as owner.

The deposit of materials upon the lot in question by the plaintiff for the purpose of making land constituted such materials a part of his real estate, and gave him the same right of action for an injury thereto, which would accrue to him for similar injuries done to the natural land transferred under his conveyance.

These acts of the defendant constituted a trespass upon the plaintiff's property, rendering it liable for such damages as were thereby occasioned him, unless they were justified by the limitations and restrictions imposed by the sinking fund ordinances upon the power of disposition, and the covenants and conditions inserted in the deed by which the city parted with its ownership (*Tillotson* v. *Preston*, 7 Johns. 285 ; *Noonan* v. *City of Albany*, 79 N. Y. 470 ; *Mairs* v. *Manhattan Real Estate Agency*, 89 id. 498), and it is accordingly claimed by the appellant that the conduct of the Croton Aqueduct board, in taking and retaining possession and control of the premises as the agent of the defendant for the purposes described, was authorized by the provisions of the original deed of conveyance from the city and the terms of the sinking fund ordinances under which such conveyance was made.

These ordinances adopted in 1844, provide, among other things, that the lands under water on the shores of the island of New York, belonging to that city under its several charters,

might be sold and conveyed by such city to parties desiring to purchase the same, giving priority to the owner of the adjacent uplands upon certain terms and conditions therein mentioned. Section 15 reads : "No grant made by virtue of this ordinance shall authorize the grantee to construct bulk-heads or piers, or make land in conformity thereto, without permission so to do is first had and obtained from the common council, and the grantee shall be bound to make such land, piers and bulk-heads at such times and in such manner as the common council shall direct under penalty of forfeiture of said grant for non-compliance with such directions of the common council." These ordinances were recognized and approved by the State legislature in chapter 225 of the Laws of 1845, and were attempted thereby to be placed beyond the power of the local authorities of the city to alter or amend without the previous consent of the legislature. In pursuance of the authority conferred by them and after complying with all of the precedent conditions therein contained authorizing it to convey the title of the property, the defendant, for a valuable consideration, on January 29, 1848, executed and delivered to the Farmers' Loan and Trust Company (which was then the owner of the adjacent upland) all of the lands under water in the East river, except the lands designed for streets and avenues lying between Thirty-first and a point lying near Thirty-sixth streets, and between Avenue A and the line of high-water mark on the adjacent uplands. The lands thus conveyed extended both sides of First avenue, and its easterly line projected into the river an average distance of about four hundred feet from the line of high-water mark. The object of this conveyance was expressly stated to be to enable the grantees to make and gain the land under water in the East river, and purported to give immediate possession of the property conveyed to it, with the right to levy wharfage and cranage, and assumed to grant, bargain, sell, alien, release and convey to it, and to its successors and assigns forever, all of the estate, right, title and interest which the parties of the first part had or might lawfully claim by virtue of their several charters, and va-

rious acts of the legislature, in and to the lands described, with all of the privileges, advantages, hereditaments and appurtenances thereunto belonging and appertaining. This deed, however, contained certain covenants on the part of the party of the second part, and certain conditions inserted for the benefit of the party of the first part in conformity with the provisions of the sinking fund ordinance, and which, so far as they are essential to the questions under consideration, were substantially as follows:

The parties of the second part covenanted for themselves and their successors and assigns that within three months after they should be thereunto required by the party of the first part, but not until they should be so required, they would build and erect such *bulk-heads, wharves, avenues and streets* upon the lands described as intended for streets in said deed as might be required by the common council of said city, and fill in the same and regulate, pave and lay sidewalks thereon and keep the same in repair. It was further provided that in case of the default of the party of the second part to perform said covenant, that the parties of the first part might, at their option, either do the work thereby required to be done, and charge to, and collect from, the parties of the second part the expenses of so doing, or re-enter upon and take possession of said granted premises or any part thereof and reconvey the same to other persons. It was further covenanted by the parties of the second part that they would pay all taxes and assessments which should be lawfully imposed upon said premises, and that the true intent and meaning of the conveyance was that the parties of the second part would not build the wharves and bulk-heads, avenues and streets before mentioned, or any part thereof, or make the lands *in conformity with the covenants thereinbefore mentioned*, until permission for that purpose should be first had and obtained from the parties of the first part, and that they would not build or erect any wharf or pier into the East river in front of Avenue A, without the permission of the parties of the first part. It was further provided that upon a breach by the parties of the second part of any of the covenants therein

made by them, that the parties of the first part might re-enter and take possession of the said granted premises and hold them discharged of any right, or claim thereto on behalf of the said parties of the second part, their successors or assigns.

Prior to this time the city had been vested by its several charters with the ownership in fee-simple of all of the lands under water surrounding it to the extent of four hundred feet from low-water mark, and had, except for the provisions of the sinking fund ordinance, unlimited authority to transfer an absolute title in such lands to its grantees. (*Furman* v. *Mayor*, etc., 5 Sandf. 34.)

Upon a former appeal in this case to this court, reported in 62 N. Y. 592, it was held that the grantee in this deed took an estate in fee-simple and became thereby invested with all of the rights and privileges of an absolute owner, except as restricted by the covenants and reservations contained in it. It was further held that the true construction of the covenants contained therein did not require the previous consent of the common council to authorize the grantees to make and fill up the intermediate spaces between the several streets and avenues therein described, but that such covenant was necessary only to authorize the construction of the streets, wharves and avenues therein provided to be made by the grantee.

It is now claimed that the sinking fund ordinances hereinbefore referred to, but which were not before this court on the former appeal, restricted the power of the corporation to convey the lands in question, except upon the condition that no land whatever should be made upon the property conveyed unless the permission of the common council to do so, should have been previously obtained.

The former decision of this court either directly or indirectly determined all of the material questions in the case except that concerning the construction of such ordinance, and the further question as to whether such permission to make land had been granted or waived by competent authority on the part of the defendant.

Under the deed the trust company immediately went into

possession, of the property conveyed to it and proceeded to make the lands contemplated therein.

The evidence shows that while the common council previous to 1856 occasionally passed resolutions authorizing the construction of avenues, streets, piers and bulk-heads on this property, it never from the time of the original grant passed any ordinance expressly authorizing the filling up of the granted lands, except that of December 26, 1856, approved by the mayor five days thereafter.

This ordinance purports to establish a map, plan and new exterior water line on its easterly side for the city of New York. This line was thereby ordained to be a street called East street, running nearly parallel with Avenue A, opposite the property in question and at a distance of about two hundred feet easterly therefrom in the river. It was further ordered that the several avenues and streets between Rivington and Thirty-eighth streets be continued to East street by a prolongation of the lines of such avenues and streets. The ordinance then provided " that the proprietors of lands adjoining or nearest and opposite to East street, as hereby established, be and they are hereby authorized and directed to make and complete said East street on or before the first day of January, 1860, and on and before the said day to fill and level the spaces between their property and the said East street." This ordinance, so far as it attempted to establish East street as the exterior line of the city, was indirectly annulled by the paramount authority of the State legislature by the passage of chapter 763 of the Laws of 1857, which established a bulk-head and pier line on the East river side of New York, differing from the line of East street, and in fact running near to and almost parallel with the easterly line of Avenue A, as established in the map attached to the conveyance to the plaintiff's grantors.

It is now claimed by the defendant, that because its agents, the common council, were not authorized to establish a line for the city beyond the boundary of the property owned by it, that the ordinance requiring the filling up of the land formerly owned and conveyed by it, is not a performance of

the contract by which the defendant impliedly covenanted at some time to make such requirement.

We do not think that it lies in the mouth of the defendant, under the circumstances, to allege the futility and invalidity of its own acts performed in pursuance of its contract obligations for the purpose of establishing a ground of forfeiture against its grantees.

By this ordinance it required its grantees to perform all that it had contracted to do, and it is not for the defendant to say that because it commanded the performance of conditions in addition to those which it was by law and its contract authorized to require, that the compliance by its grantees with its lawful requirements was invalid and nugatory. This resolution of the common council has never been modified or rescinded by it, or by any other authority except through the operation of the act of the legislature above referred to, and so far as the common council had power to legislate or act on the subject, remains in full force and of binding, operation, upon all affected by its terms. So far as it attempted to establish an exterior line in the navigable waters for the city, it was tentative merely and confessedly subordinate to the ultimate power of the sovereign to intervene, and could have no lawful effect upon that subject without the approval of the State.

However, upon the subject of the time and manner of making the streets, avenues and lands between their exterior line and the line of high-water mark, not only the sinking fund ordinance, but the stipulation contained in its deed of conveyances invested the defendant with full authority, and assuming the plaintiff's contention as to the meaning of the ordinance to be correct, as between it and its grantees, rendered it solely competent to determine the time and manner of such filling.

The alteration made by the legislature in the exterior line proposed in this ordinance, had no other effect than to operate as an amendment to the ordinance, and thereafter cause it

to be read as though the line fixed by the legislature had been originally contained therein.

This ordinance manifested an unmistakable intention on the part of the common council not only to make and complete an exterior line for the city, but also to cause the intervening spaces to be filled up by the owners of the land opposite such line, and the construction and extension of the projected streets and avenues over such made land. Indisputable rules of construction make this ordinance applicable to the plaintiff's grantors and the property owned by them. The provision requiring the streets and avenues to be extended could be complied with only by filling up the granted lands, and there were no other persons who answered the description of proprietors of lands, either adjoining, or nearest and opposite to East street as thereby established, except the grantees of the city and their assignees.

The State has never conferred authority upon any one to convey the title to lands in the navigable waters surrounding New York outside of the line four hundred feet from low-water mark, and there could not at that time have been any individual lawful owners of lands between the projected lines of East street, and Avenue A.

It seems to us that the acts of the common council, so far as they assumed to exercise the powers with which they were confessedly invested, not only by law, but by the express stipulation of the contact between the parties, are clearly operative and sustainable.

It is only when the various enactments of a legislative body are plainly dependent upon each other, and so inseparably connected in matter and design that they cannot be divided without defeating the object of the statute, that the invalidity of one provision, will entail that of those remaining. If effect can consistently with the general legislative intent be given to such parts of a statute as are not in conflict with paramount authority and are within the authority of the body enacting them, it is the duty of a court, while rejecting its unconstitutional and unauthorized parts, to enforce the remaining provisions of a

law which are within the legislative power of its authors. When part only of a statute or a section is unconstitutional, that part only is void, unless the other provisions are so dependent and connected with that which is void, that it cannot be presumed that the legislature would have enacted the one without the other. (Sedgwick on Statutory Construction, 413; *Commonwealth* v. *Hitchings*, 5 Gray, 482; *State* v. *Wheeler*, 25 Conn. 290.) We can see no ground for giving such a construction to this ordinance as would nullify all of its provisions, unless its assumed power to establish an exterior line for the city should also be upheld. By the existing laws a vast property, valuable not only from its present worth, but from the prospective advantages to be derived therefrom for purposes of taxation and the letting of piers, wharves and other privileges, had been conferred upon the city which could be made available to it, only by the performance of their contract by the city's grantees. It is not to be supposed that it would delay the enjoyment of the advantages already obtained because it could not immediately obtain other benefits which it desired in addition thereto.

The common council in passing this ordinance acted in a twofold capacity, and appeared not only as a legislative, but also as a contracting body. As a legislator its powers were limited by the requirements of the city charter, and as a contractor by its authority as agent for its principal, the city. So far as it was authorized to act as the agent of a responsible principal, its action must be considered in the light of the principles which govern the acts of other agents, and with a view of arriving at the meaning and intent of the parties.

Under the deed in question the common council had the right to require the grantees therein and its assigns to fill up the land conveyed by it, and so far as it assumed to require any thing more its act was unauthorized and ineffectual ; but, so far as it had the right to require the land to be made, its requisition was valid and effectual. Neither by the terms of the ordinance nor from the nature of things was this requirement made to depend upon the establishment of East street as

the legal boundary of the city, and there is no good reason why the court should import a condition into the ordinance for the purpose of imposing a forfeiture which neither its terms, nor the practical construction given thereto for a long course of years, by all of the parties, seems to require. In respect to the exercise of the power of determining the time and manner of the filling of the lots, the common council acted simply as a delegated body authorized to decide that question between the parties, and had no power to require more or less than was provided in the deed and ordinance. The exercise of that power was from its nature entirely independent of the other subjects embraced in the attempted legislation, and did not at all depend upon legislative authority.

The advantages to be derived from the making of land in the locality mentioned were as much incidental to one exterior line as to another, and did not in any degree depend upon the adoption of the particular line indicated in the ordinances.

But it is further claimed that the plaintiff is not entitled to the benefit of the provisions of this ordinance of the common council, because neither he nor his grantors complied with its terms in respect to the time of making the land in question. We do not think this is so. Even if a condition had been inserted in the deed imposing a forfeiture of the title conveyed, unless the grantee caused the land to be filled up within a specified time, it would be inoperative unless expressly enforced by the grantor, and it would be entirely competent for the grantor, either wholly to waive the forfeiture, or to extend the time within which the condition should be performed. (*Ludlow* v. *N. Y. & H. R. R. Co.*, 12 Barb. 440.)

We think that the facts in this case establish a clear and unequivocal waiver of this condition in respect to the time of making the lands provided for, even if it should be regarded as applying to the lands between the streets, etc.

When the plaintiff, in February, 1867, acquired title to his premises, the process of making wharves, piers, streets, avenues and land had been carried on for nearly twenty years, not only without objection from the city authorities, but under the direc-

tion, supervision and control of the officers charged with the performance of those duties for the city.   At that time Thirty-first, Thirty-second, Thirty-third and Thirty-fourth streets and the First avenue had been completed and taken possession of by the city.   The lands on the north-westerly side of First avenue had been wholly filled in, and those south-easterly of that street had been made for the space of nearly one hundred feet nearest thereto.   The common council had authorized street railroads to be constructed over First avenue and Thirty-fourth street, and had, by the appropriation of the property and many other acts of legislation, ratified and adopted the acts of the owners in filling up and making the lands in question.   The city authorities had taken possession of the wharves and bulk-heads at the termination of the several streets on this property, and levied and collected wharfage from the various owners of vessels making use thereof.   No requirement of the common council of New York in respect to these lands has been shown to have been uncomplied with, by its owners except that purporting to establish East street, and no steps were ever taken by the city to dispossess their grantees, or to recover as for a forfeiture, the possession of the lands on account of any breach of the covenants contained in the deed.   Under this state of facts the appellant now raises the questions, first, as to the effect upon the rights of the parties, of the provisions of the sinking fund ordinances; and second, assuming that such provisions apply to lands other than the streets, etc., whether the legislation and conduct of the common council amounts to a waiver of the conditions referred to.

It may very well be doubted whether the construction formerly given by this court to the covenants contained in the deed should not also be deemed applicable to the provision of the sinking fund ordinance.

The object of this provision was not to cause any interest in the land conveyed to be retained by the grantor, or to postpone the period of enjoyment of its owners, or increase the security of the public creditors, but was obviously designed to enable the grantor to shield itself from the burden of caring for and

maintaining the piers, wharves and streets until such time as it should deem the assumption thereof profitable and expedient, and to fix the time and manner of erecting those structures with reference to the introduction therein of water, gas, sewer pipes and other necessary conveniences which naturally fell under the supervision and control of the city authorities. The accomplishment of this object would in no way be materially interfered with by allowing the grantees to proceed with their contemplated work of redeeming their lands from the water and realizing the benefits, which were the sole inducement to them, for its purchase.

The conduct of the defendant through all of its departments, for a period of upwards of twenty years, has affixed this interpretation upon the clause of the ordinance and deed in question, and it would seem to accord with the true meaning and intent of these instruments. It was a provision originally voluntarily adopted by the city authorities, and was intended for the sole benefit of the municipality. It was not imposed as a limitation upon their authority to convey, but was adopted simply for the purpose of restraining the power of the grantee to throw an untimely burden upon the corporation. When the deed was given, strictly in accordance with the power conferred by the ordinance, a good title was conveyed to the grantees, its object was satisfied, and all subsequent power to enforce the performance of the contract was vested solely in the city. It could release the grantee from his covenants, accept satisfaction, or waive conditions, as could any other party to a contract containing provisions intended solely for his benefit.

The rule by which this ordinance is to be construed is such as applies to the interpretation of the acts of other legislative bodies, and is that which shall best effectuate the intent of its authors. The reason and object of an act are to be regarded to arrive at its meaning, and while it is not competent to interpret that which has no need of interpretation, or to deny to clear and precise terms the sense which they naturally present, yet when such terms lead to manifest injustice and involve an absurdity, law and equity both require us to give such an effect

to the language used as will accomplish the obvious intent of the legislature. ( *Watervliet. Turnpike Co.* v. *McKeon*, 6 Hill, 616 ; *People* v. *Utica Ins. Co.*, 15 Johns. 358 ; *Holmes* v. *Casey*, 31 N. Y. 289 ; *People* v. *Draper*, 15 id. 532.)

The only lands expressly provided to be made by the ordinance are those constituting the piers, wharves, streets and avenues, and since it is unnecessary in order to give the clause in question an office to perform, to extend it to lands outside of such streets, and to create a right unconnected with those clearly intended to be granted, it is in accordance with settled rules of interpretation to limit the effect of general language to the accomplishment of the object undoubtedly intended. (*Donaldson* v. *Wood*, 22 Wend. 395.) If it be held that the words " make land in conformity thereto," as used in the ordinance, apply only to the lands necessary to form the piers, bulk-heads and streets, the defendant will not only be protected in all of the rights intended to be secured to it, but the grantee will receive the benefits of his purchase and the deed will be free from objection on account of the apparent repugnancy existing between the interests actually conveyed and those apparently reserved.

It is quite inconceivable that parties should purchase land burdened with the condition that it should be enjoyed only by the permission of the grantor, and a construction having that effect, should only be adopted when no other is possible or sustainable.

But conceding, for the purposes of the argument, that the clause in the ordinance is broader than the provisions of the deed, and that it should be read in connection with it, as imposing a forfeiture of the property conveyed, upon a violation of the provision authorizing the making of land, we do not see how the appellant is, in this action, benefited thereby. The clause would, in that event, operate as a condition subsequent only, and render the property conveyed liable to forfeiture for its breach. Neglect to perform such a condition does not *ipso facto* determine the estate, but only exposes it to be defeated and determined at the election of the grantor, to be signified

by some act equivalent to a re-entry at common law. (*Ludlow v. N. Y. & H. R. R. Co.*, 12 Barb. 440.) This proposition is quite elementary and needs no elaboration.

It is stated in Washburn on Real Property, vol. 1, page 473, that " a condition defeats the estate to which it is attached, only at the election of him who has a right to enforce it. Notwithstanding a breach of the condition, a freehold estate can only be defeated by an entry made, and until that is done it loses none of its original qualities or incidents." It is said in vol. 2 Greenleaf's Cruise on Real Property, page 13, " a condition is something inserted for the benefit of the grantor, giving him power, on default of performance, to destroy the estate if he will, and revest the title in himself and his heirs. As the law does not presume forfeiture, it requires some express act of the grantor, as evidence of his intent to reclaim the estate, viz.: an entry. A condition not only depends upon the option of the grantor, but is also controlled by equity, if the grantor attempts to make an inequitable use of it." Such a use we conceive it to be when a grantor, subsequent to his grant, imposes a servitude upon land conveyed, and then attempts to perpetuate it indefinitely, by threats of enforcing a forfeiture incurred, if at all, through an effort on the part of the owner to relieve himself from the unlawful imposition of the servitude.

As we have before seen the deed conferred upon the grantees therein the title and absolute ownership of the property conveyed, subject only to be defeated at the option of the grantor for a breach of the condition subsequent.

The claim now made, that there was some right or interest in the property which still remained in the city notwithstanding its deed, is opposed to the principles declared in our former decision, and the express language of the conveyance.

The only right which the grantor reserved under the deed, as thus construed, was the right of re-entry, and of taking re-possession of the lands conveyed for condition broken. (*Sharon Iron Company* v. *City of Erie*, 41 Penn. St. 341.) It gave it no right to burden the land with a servitude, or to occupy

any portion of it for any purpose whatever. It reserved no right therein authorizing a disturbance of the possession of the grantee, or an entry, except for condition broken, and then only under a claim of right to evict the defendant and to resume ownership and possession. This right could be exercised only by the authority of the common council, and by the express terms of the ordinance, upon the sole condition of showing a non-compliance with some lawful requirement of the common council relative to the making of the streets, bulk-heads or lands referred to in the ordinance.

It is not claimed that any such directions have ever been made, that have not been complied with by the grantees or their assigns, or that the right of re-entry has been lawfully exercised or attempted by or on behalf of the defendant. On the contrary, when the right to flow the lands of the plaintiff was disputed, the Croton Aqueduct board based its alleged right solely upon the license from Tallman, and the sewer was originally constructed under such license, and not by virtue of any right asserted to have been reserved in the deed, or to exist by force of the ordinance. Obvious principles of equity estop a party who has acquired possession of another's property by permission, from retaining it under another claim hostile to that under which the original entry was made. "The entry must be made not by consent, invitation, or hospitality of the occupant," "but with the intent to gain seizin, and accompanied by some act or declaration showing such intent, and challenging the right of the occupant." (1 Hilliard on Real Property, 64, § 17; *Bowen* v. *Bowen,* 18 Conn. 535. See, also, *Walrath* v. *Redfield,* 18 N. Y. 457.)

It follows from the views expressed,

First, that the action of the common council in passing the so called East street ordinance was a valid exercise of its power under the deed and sinking fund ordinance, to determine the time and manner of making the lands in question, and that the grantees of the city were thereby authorized to proceed with the work of making such lands.

Second, that the existence of the covenants and conditions

referred to in the sinking fund ordinance and deed, and a breach thereof by the plaintiff afford no defense to the defendant for the trespasses committed by it upon the property in question.

The request of the defendant for a charge upon the subject of an allowance of interest by the jury was too vague and uncertain to be made the basis of a valid exception to the refusal of the court to so charge. It is well settled that in an action of tort like this to recover even unliquidated damages, the allowance of interest by way of damages is in the discretion of the jury. (*Walroth* v. *Redfield*, 18 N. Y. 457; *Parrott* v. *Knickerbocker and N. Y. Ice Co.*, 46 id. 361; *Mairs* v. *Manhattan R. E. Assn.*, 89 id. 498.) The discretion of the jury on this question was exercised, and they have found the amount of the interest as a part of the damages suffered by the plaintiff, and we see no reason to disturb the judgment on that ground.

The judgment of the General Term affirming the judgment entered upon the verdict at Circuit should, therefore, be affirmed.

All concur.

Judgment affirmed.