Hatch, J.
—This action was brought to obtain an injunction restraining defendant from the prosecution of summary proceedings for the removal of plaintiffs from certain premises occupied by them, and to also have adjudged their equitable rights therein. The complaint alleges that in 1865 Jessie Peek was the owner in fee and possessed of said premises; that in that year said Peck-gave possession and license to Joseph Bohn to enter into possession of said premises and to use and occupy the same, forever, or so long as he might desire, and to erect thereon dwellings and buildings for his use and benefit; that said Peck did then and there surrender, to said Bohn, his interest and possession to said property. Said complaint then proceeds to allege that thereafter entry was made under said license; that buildings were erected thereon of the value of $1,000; that said lot was filled up and otherwise improved, said buildings repaired from time to time, *405 and taxes assessed thereon paid; that said Bohn has continued in the uninterrupted possession since 1866, and with his wife Catherine since 1876, of said premises. The complaint further alleges the institution of summary proceedings in the municipal court of Buffalo for the removal of plaintiffs from the premises for nonpayment of rent, the entry of judgment in favor of defendant, the entry of final order granting defendant the right of possession, also the institution of another proceeding to oust plaintiffs of possession, etc., and prays injunction, etc. So far as the allegations of the complaint are concerned, the right and title of the plaintiffs in and to the premises rests upon the license obtained from Jessie Peck; giving full force thereto it would amount to.a mere nude pact, unless the improvements made were permanent and beneficial to the estate, and were so made upon the strength, and induced by the license conferred and with the knowledge of the licensor. Under such circumstances an equitable consideration would be established, and equity will protect the license therein. Freeman v. Freeman, 43 N. Y., 34; Miller v. Ball, 64 id., 286.
The theory upon which this right is protected is that to allow the assertion of the legal claim would operate as a fraud upon the person asserting the equitable right. This power is in derogation of the common law and the Statute of Frauds, consequently the courts are cautious in its exercise and a clear case is required. It is said by Danforth, J.: “And first, the contract which equity will regard as equivalent to the grant required at common law or by the statute must be a complete and sufficient contract, founded not only on a valuable consideration, but its terms defined by satisfactory proof and accompanied by acts of part performance unequivocally referable to the supposed agreement. In such a case the application of the statute is withheld lest, by its interposition, the mischief would be encouraged which the legislature intended to prevent.” Wiseman v. Lucksinger, 84 N. Y., 38; Cronkhite v. Cronkhite, 94 id., 323 ; Fargis v. Walton, 107 id., 398; 12 N. Y. State Rep., 60.
When the entry, and acts under it, fail of complete and satisfac- ' tory establishment, it becomes a mere license and revocable at pleasure. See cases cited, and Duryee v. Mayor, 96 N. Y., 498 ; Ogsbury v. Ogsbury, 115 id., 295 ; 26 N. Y. State Rep., 351.
The facts relied upon to support plaintiff’s claim are brief. It is stated by plaintiff that he asked Jessie Peck, whom he heard was the owner of the lot, “ if he wouldn’t let me put that little house on it. He said yes, sir, go and put it on, and leaAre it there as long as you are a mind to. And I put it on.” Again being recalled he says: “At the time I moved my house over, I saw Jessie Peck ; he said right in the house, previous to going on, -fill up the hole, the rest of it; I will give you that place for nothing to live on it. He said fill it up. He said he would give it to me. _ I understood he owned it.”
Gr. W. Peck testified that his father, Jesse, gave plaintiff the privilege óf moving the house on to the lot. This is all the testimony as to the license. Taking .the first statement of plaintiff the testimony of ..Gr,* W. Peck* giving,to it the most favorable *406 construction, and it fails to support the allegations of the- complaint At the most it was. a bare naked license, revocable at any moment It provided for no length of time; did not contemplate the making of'any improvement, and authorized, none. The house moved; on was small, of little value, and was placed ■ on piles driven in the ground. It was in no sense a permanent structure in the eye of the law. These circumstances are much too frail upon which to- base a claim of equitable right, for such right must be clear, definite and inconsistent with the theory of a mere license. Ogsbury v. Ogsbury, supra.
When plaintiff was recalled he passed far beyond' the allegation of the complaint, and the theory of a license, planting himself upon a gift, and not alone that, but a right secured by contract, coupled with a valuable consideration, for in addition to the testimony already quoted, he said Peck told him to fill up the hole. “ If you do a good job I will give you a portion of it, what you occupy now.” “ The other part was south from me.” Up to this point the theory of the trial had been in accordance with the allegation of the complaint, that plaintiff entered under the license, and although this testimony was given, such theory does not seem to have been changed, there was no amendment of the complaint, none was asked for, yet the court below, in disposing of the case, considered it, upon the basis of this testimony, and counsel for plaintiff now insist upon it. In view of the theory of the action that this right rests solely upon the statement of plaintiff, and that Jessie Peck is dead, it is extremely doubtful if this testimony alone would support a finding of equitable right in the plaintiff to the property, taking into consideration his previous testimony defining the authority under which he entered and the other circumstances. It is not necessary however in the view taken of the other facts to determine this question. A careful examination of all the testimony fails to show that Jessie Peck was ever in fact the owner of the property; indeed plaintiffs do not claim that he had the legal title. The position now taken is that Jessie Peck was the agent of Francis and Charles Peck, who resided in California, and that he had the control and management of the property, and therefore was authorized to allow the entry, and thus create the right. There is no testimony showing that Charles and Francis, or either of them, ever expressly conferred power upon Jessie to allow the entry, or that they ever in fact had notice of it or ratified it; the only basis upon which it rests is found in the circumstances, showing Jessie’s actions in connection therewith. The circumstances are that Jessie Peck had formerly owned some land adjoining that in question which he had deeded to the railroad; that he and one James Sloan had business relations together; that said Sloan was the owner of these premises, and on January 15, 1858, deeded the same to Charles and Francis Peck, who then resided, and have since continued, in the state of California; that the latter never had manual possession of the property; that said premises for a time were assessed for taxation to Jessie Peck, and that he exercised acts of control and ownership over them.
*407 John Auchinvole, who was sworn, had heard that Jessie Peck had purchased the property about 1865; that he claimed to own it ana had bought it as. an investment. If we give due weight to all the circumstances, I think they fall short of establishing any right in Jessie Peck to diyest the real owners of title to their property or to create therein a life interest in favor of Bohn. The deed from Sloan to the Peck boys was recorded, and consequently was constructive notice to Bohn, in whom the legal title vested, and were was in fact the owners, so nó rights can be predicated upon Peck’s claiming to be owner. Ho reason is assigned or disclosed for taking title to the boys, for the benefit of Peck, there is nothing strange or unusual about it; the fact that they lived in California does not of itself prove anything, as titles .are frequently held by non-residents.
The deed should have put Bohn on inquiry as to who were the owners, and such inquiry would at once have disclosed that Jessie Peck had no title, and in consequence could create no interest in the estate without express authority. If Jessie Peck had written authority to take charge of the land, coupled with the power to sell, it would have given him no right to have created the •estate here contended for. Rossiter v. Rossiter, 8 Wend., 495; Bumstead v. Hoadley, 11 Hun, 487 ; Craighead v. Peterson, 72 N. Y., 279.
The granting of this right was the exercise of the power conferred by ownership ; to infer the existence of such power from the -circumstances now before us, would render titles to land in the hands of an agent of very uncertain tenure. The right to make the grant or give the-estate can only be inferred upon clear proof either of power delegated or of subsequent ratification. It cannot be supported upon a basis of inference, unless such inference be a necessary one and inconsistent with any other theory arising from the facts. The facts here proven are insufficient to support the claim. In addition to this, it is quite evident that Bohn thought that the title under which he held was precarious, for in 1873 he attempted to reinforce his holding by bidding the property off at a tax sale, for taxes accruing in 1871, about five years after the entry. He sought this method for the purpose of perfecting title. If he held under a license for life such act could not be defended, for by it he sought to defeat the reversion after" his estate had ceased.
Similar attempts were made subsequently to accomplish the same purpose, but it is not now claimed that they created any legal estate in Bohn; it simply characterized his possession, as will be hereafter noticed. This attempt to obtain a tax title, weakens very seriously the testimony and circumstances upon which he relies to maintain his present position. Claim is further made that the premises wore never a part of the land owned by the Pecks, but that it has been reclaimed from Scajaquada creek. This land is a part of what was formerly known as the Parish tract, and by the deed in evidence from Parish to Porter, its southerly boundary was the creek. When Bohn went into possession, such solid land as he occupied was bounded by the creek, *408 and Bohn simply filled it in. He could obtain no greater right in the premises than the Pecks had. They had the right to fill the same portion of the creek that Bohn filled, and, when filled, it would become a part of the estate. They were then the rijrarian owners of the land, and had'the right to reclaim it from the creek. Smith v. The City of Rochester, 92 N. Y., 463; Chenango Bridge Co. v. Paige, 83 id., 178; Seneca Nation of Indians v. Knight, 23 id., 498. Plaintiffs- are, therefore, not aided by this consideration.
If, however, the claim of plaintiffs to equitable relief growing out of the license granted by Jessie Peck be conceded, there still remains an insuperable bar to granting it in this action under the facts of this case. In 1875 Bohn leased by writing, under seal, these premises of one G-. D. W. Clinton for the term of three years. In summary proceedings instituted in the municipal court of Buffalo, judgment was rendered establishing such lease as a lease between said parties. In that proceeding defendant showed himself to have succeeded to all the interest of Clinton, and to have become possessed of the legal title by conveyance and assignment from James D. Clinton, the survivor of G\’D. W. Clinton, and also the grantee named in the conveyance from Francis and Charles Peck of the premises in dispute. Judgment was entered therein adjudging plaintiffs in default for non-payment of rent, and directing warrant to issue placing defendant in possession. On appeal, that judgment was affirmed by this court. Zink v. Bohn, 3 N. Y. Supp., 4.
This judgment conclusively establishes that from 1875, plaintiffs have occupied these premises as tenants under the lease, and, in consequence, they are estopped from denying the title of the landlord, and those claiming under him. Woodruff v. Erie Ry. Co., 93 N. Y., 618; Ackley v. Westervelt, 86 id., 448; Territt v. Gowenhoven, 79 id., 400. And this result obtains, even though the lease itself shows, upon its face, that the landlord had no legal estate. Tilyou v. Reynolds, 108 N. Y., 558; 13 N. Y. State Rep., 85_ _
_ _ It is claimed that as Bohn was in possession of the premises at the time of the execution of the lease, he took no rights thereunder, and consequently is exempted from -the operation of the foregoing rule; that the lease is void for want of consideration. ¡No such distinction is recognized in the cases cited, and their reasoning excludes it; besides it has been expressly, condemned. Prevot v. Lawrence, 51 N. Y., 222; McCreary v. Marston, 56 Cal., 403 ; Hawes v. Shaw, 100 Mass., 187.
At the time of the execution of this lease Jessie Peck was alive. It was, therefore, within the power of Bohn to have established all his rights to the property. If he had refused to execute, it was equally within the power of Clinton to have taken proceedings to dispossess him and show by Peck that he had no right. Bohn at this time had attempted to make tax title to the property, and, according to the testimony of his wife, he was willing to make a lease to defendant after he had succeeded to title, but she objected. Both Peck and Clinton are now dead, and Bohn asserts this right These suggestions make clear the wisdom of the law *409 which enforces the estoppel. Before the tenant can be heard to assert an' equitable right, existing prior to the execution of the lease, he must surrender possession to his landlord. Whiting v. Edmunds, 94 N. Y., 314.
In all the cases that have fallen under my observation, where the tenant is held to have the right to attack the lease, equities arose subsequent to the letting, as where the landlord’s title becomes extinguished, as in Hetzel v. Barber, 69 N. Y., 1-15, or where the lease, valid in form, is shown to be void by' some extraneous circumstances, as in People v. Howlett, 76 N. Y., 574. But no case is found allowing a defense of prior rights where the relation of landlord and tenant was once established, and the tenant continued to occupy thereunder. Itis also claimed that Bohn occupied under his tax deed at the time of the execution of the lease. But such deed gave him no right of property or title therein, as is conceded; consequently he could not hold possession by virtue of something which gave him no rights; besides, this right, if any existed, was prior to the execution of the lease. The only excuse for this lengthy discussion grows out of the earnest insistence that plaintiff’s equitable rights have not been protected. Care has thus been taken to examine all the points raised. We are unable to find that the trial court denied any right within its power to grant. The judgment appealed from is, therefore, affirmed.
Titus, J., concurs.