HENRY H. BABCOCK and others *v.* FRANCIS A. UTTER and others.

A parol license given without consideration, to a party to build a dam upon the land of the licenser and across that portion of a stream included within his boundaries, is not an equitable estoppel operating by way of impediment upon the licenser and those deriving title from him.

Equity never aids in subversion of legal rights; but on the contrary, it always assists in their security and preservation, by appropriate remedies, and in furtherance of justice.

A mere verbal license to do an act, or a series of acts, upon the land of the licenser, necessarily excludes the idea of a contract right which equity might enforce.

The doctrine of the case of *Rench* v. *Kerr* (14 S. & R., 207), not law in this state.

JOHNSON, J.   It is agreed, on all hands, that the right in question in this case is an interest in real estate, which in law cannot be created or transferred from one party to another without some instrument in writing.   Whether it can be done by a court of equity, against the positive provisions of the statute, is the question to be determined.

It is also agreed that the right claimed by the plaintiffs, as against the defendants, on the north or west side of the river was derived solely from a mere parol license, given by Henry Clark in 1821, without consideration, to William Utter, to build and abut a dam upon the lands of the former and across that portion of the stream included within his boundaries.   The dam was built under this parol license, and has been ever since maintained for the purpose of supplying with water-power the mills and machinery erected by said Utter and his assigns according to the original intention and design of both the licenser and licensee, until the commission of the acts complained of in this action.

The plaintiffs' position is, that although no property or interest ever actually passed by the license from the licenser to the licensee, yet by the execution of the license by the licensee the rights of the licenser became so fixed and bound that neither he nor his heirs or assigns can now revoke such license, and thus deprive the licensee or his assigns of the advantages and privileges accruing by means of the license

thus executed. This position, if sound, must have its foundation in the principle of equitable estoppel, operating by way of *impediment* upon the licenser and those deriving title from him. There is no other principle in our law, as I conceive, which can lend any countenance to such a proposition. Does the doctrine of equitable estoppel apply to a case like this? I am constrained to say, after a careful examination of the facts and the authorities, that, in my opinion, it does not, and that the preponderance of authority in this country is most decidedly the other way. I shall not attempt to go over the cases, but content myself with observing that the principal authority in this country for the application of the doctrine to the case of a mere verbal license is that of *Rench* v. *Kerr* (14 Serg. & Rawle, 207), which DUER, J., in *Jamison* v. *Milliman* (3 Duer, 255), declared not to be law in this State, or in this country outside of Pennsylvania.

A mere verbal license to do an act or a series of acts upon the land of the licenser, necessarily excludes all idea of a right to do the act or acts by virtue of a contract, or promise, which equity might enforce specifically. It also excludes all idea of fraud or concealment on the part of the licenser, in respect to his title, and of ignorance or mistake as to such title on the part of the licensee. It presents the case simply of two parties acting voluntarily with their eyes open; each understanding fully and perfectly the situation of the other, and where the licensee does the act he is permitted by the license to do, and makes the expenditure necessary thereto, with perfect knowledge and consciousness on his part that he has acquired no interest in the lands of the licenser, which the law can recognize or protect, and never expecting to acquire any other interest than that conferred by the license. What is there in such a case for equity to act upon? Manifestly nothing. While equity will regard that as done which the parties agreed to do, and compel the specific performance of agreements between parties according to the original understanding and intention, and will interpose to protect an innocent party against mistakes in matters of fact, and the fraudulent acts or concealments of the other party,

it can never lend its aid to confer upon one, as against another, rights or interests which were never within the contemplation of either, even by way of impediment. It never aids in the subversion of legal rights, but always assists in their security and preservation, by appropriate remedies, and in furtherance of more perfect justice. To grant the relief here prayed for, would effectually subvert the legal right, or, which is the same thing in effect, forever prevent the exercise of those rights, which unavoidably pertain to one seized of the undisputed legal title, and with which he has never consented to part. To imply such consent, from a mere license to occupy, would be to confound a license with a contract or deed, which have no resemblance to it whatever. It was never any part of the office or jurisdiction of equity to shield or rescue men from the legitimate consequences of their own free and voluntary acts of imprudence or folly. To give by decree to one, the title or the right to the perpetual use and occupancy of the land of another, simply because he had been imprudent enough to build or expend money upon it with the mere naked consent of such other, without any stipulation whatever as to such title or right, would be as repugnant to the principles of equity as to to the rules of law. If, therefore, Ethan Clark's deed extended to the thread or center of the Unadilla river, it gave him all the right and title which Henry Clark had in his lifetime, and this action cannot be maintained, as the rights of Francis A. Utter are superior to those of the plaintiffs.

Upon this question, however, I agree with SELDEN, J., that the deed of Ethan Clark confines him to the bank of the stream, and conveys no right to the water, consequently there must be a new trial.

Judgment reversed.

JOEL TIFFANY, *State Reporter.*