McCaffrey *v.* Wooden.

---

## McCAFFREY *vs.* WOODEN.

A lease, of a farm, contained the following provision : " It is agreed that the said [lessor] shall have a lien, as security for the payment of the rent aforesaid, on all goods, implements, stock, fixtures, tools and other personal property which may be put on said premises, and such lien to be enforced, on the non-payment of the rent aforesaid, by the taking and sale of such property, in the same manner as in cases of chattel mortgage on default thereof." *Held* that this clause did not constitute a bargain and sale of the lessee's property, by way of mortgage or otherwise ; there being no words of sale, assignment or transfer ; and the design being that the title should remain in the lessee.

*Held, also,* that the provision was not a chattel mortgage upon the property therein specified or referred to ; nor did it create a lien thereon, in the eye of the law, *in præsenti,* in favor of the lessor. ·

*Held,* further, that such provision was nothing more nor less than that the lessor should have a lien by way of security in future, whenever rent became due and remained unpaid. That it was an agreement to give a lien, but did not create one.

That the authority to the lessor to take and sell the property, in case of default in payment of rent, resting in contract, and being in the nature of a *license* not connected with any title to the property, or any right in possession, was revocable, at the election of the lessee ; and when he forbade the taking and removal of his property by virtue of the lease, he thereby revoked and put an end to the license or authority, leaving the lessor to her remedy upon the contract ; and her subsequent removal and sale of the property were wholly tortious and without authority.

McCaffrey *v.* Wooden.

A lien upon personal property, whether arising by operation of law, or from express contract, is a right of detaining the property of another, until some claim is satisfied; and cannot exist without possession of the property in the person making the claim.

ACTION for the taking and conversion of personal property, consisting of hay and other crops, and horses.

The ownership of the property in question was conceded to have been in the plaintiff. The taking and sale of the property were conceded to have been done by the defendant. The defenses were, in the first place a parol license; and in the second place an alleged taking under a so called chattel mortgage lease, executed to the plaintiff by Catharine Beahan, for whom the defendant claimed, on the trial, to be acting as an agent. The ownership of the plaintiff, and the taking and sale by the defendant, being admitted, the case was made out for the plaintiff, *prima facie*. At the close of the testimony, on the trial, the court stated and decided, that the only question to be submitted to the jury was the question of the value of the property. And for the purpose of the trial, the court held and decided that the plaintiff was entitled to recover the value of the property taken by the defendant. To which ruling and decisions, and each and every part and proposition of the same, the defendant duly excepted.

The jury, under the direction of the court, found a verdict for the plaintiff, estimating the value of the crops and the horses, separately, amounting in the aggregate to $382. Judgment being entered on the verdict, the defendant appealed to the general term.

*J. A. Stull*, for the appellant.

At the close of the testimony, on the trial, the justice presiding, without expressing or indicating his reasons therefor, himself decided the case in favor of the plaintiff; refusing to submit any question, except as to the value of

the property. In this, it is submitted, the court erred, and the exception thereto was well taken.

I. As to the "Charley horse." He had, on the day of the execution of the lease, just been bought by the plaintiff of Mrs. Beahan, the lessor, of course with the express view of putting him upon the farm, at work. The execution of the bill of sale and lease were substantially cotemporary transactions, both dated March 31. 1. This horse cannot, therefore, be properly called "future acquired property," or property not then in existence, or not then owned by the mortgagee, in the sense of any reported cases. 2. It would be absurd to say that, as between the parties, and as to this horse, the mortgage was void for uncertainty. The parties must be supposed to have intended that the mortgage clause in the lease should cover him.

II. Nor as to the crops to be raised on the farm, whether hay or grain, was there any embarrassment to the defense. That was prevented by the relation of both parties to such property. The lessor was the owner of the farm. The farm was the agent of the production of these crops; and the plaintiff, by the lease, acquired possession of the farm; he thereby became—though not the actual, yet the "potential" owner of the crops. They were then potentially in existence. According to Bacon's Maxims, he had then "a foundation of an interest," and according to the later and best considered cases, the mortgage takes effect, under such circumstances, upon the property as soon as it comes into existence. (*Van Hoozer* v. *Cory,* 34 *Barb.* 9. *Conderman* v. *Smith,* 41 *id.* 404. *Andrew* v. *Newcomb,* 32 *N. Y.* 417.) There is no valid distinction to be made between the hay and other crops; nor between the crops and other property, tools, &c., put on the farm by the plaintiff, so far as the interpretation of the mortgage clause is concerned. The crops, when severed from the soil and placed in the barn, or elsewhere on the farm, for storage

or keeping by the lessee, may rightfully be said to be put "there by him," according to the language of the lease.

III. This disposes of all the property taken, except the "Benjamin horse." As to him as well as the other property taken, two things are to be observed: 1. That the question here arises between the original parties to the mortgage, not between the mortgagee and the creditors of the mortgagor, or purchasers in good faith, or any third persons whose interests are to be protected. 2. That the mortgage clause in the lease provides not only for the lien upon the property, but also contains a power of seizure clause therein. (*Lunn* v. *Thornton,* 1 *Man., G. & Scott,* 50 *Eng. Com. L. Rep.* 379 *to* 386.) If it be claimed, therefore, that the terms, "shall have a lien as security for the payment of the rent," upon, &c., do not import a sale or mortgage, it is very certain that the whole clause together, as between the parties, gives the right to the lessor to seize or take the property on non-payment of the rent, and sell the same. And the question is to be decided according to all the equities between the parties; and is not merely a question whether the lessor or mortgagee had a title at law, or not, to the property. Neither does any question of fraud, or fraudulent conveyance, arise in the case. It is submitted, therefore, that the parties should be left to the enforcement of the contract as they themselves made it, and as to all the property embraced in its terms.

IV. This lien was recognized by the plaintiff in this case repeatedly. He was ever profuse in his explanations that he regarded it as lien on the property, after the property was put on the premises and the crops had been grown. He took that course to quiet the plaintiff's fears as to her rent, and prevent her resorting to any measures to enforce collection thereof. He agreed that the property was then "in security for the rent," and once actually turned out the most valuable portion of it to Mrs. Beahan; and then received it back only on conditions which he

McCaffrey *v.* Wooden.

subsequently violated. This puts the case within the exception of Lord Bacon's maxim, (*Reg.* 14,) being a " new act by the grantor in furtherance of the original disposition." (*Tindal Ch. J. in Lunn* v. *Thornton,* 50 *Eng. Com. L.* 387.) Mrs. Beahan, therefore, in taking and selling the property, did precisely what McCaffrey had agreed, upon proper consideration, she might do, and she cannot be held to be a wrongdoer therefor.

V. The authorities cited by the plaintiff in the court below are, each and all of them, when examined, in favor of the defendant, and do not help the plaintiff's case. (*Lunn* v. *Thornton,* 50 *Eng. Com. L.* 379. *Bac. Max. Rule* 14, *supra.* *Wilson* v. *Seibert,* 8 *Am. Law Reg.* [1869] *p.* 608, *and cases cited, especially that in* 4 *Maine.* *Otis* v. *Sill,* 8 *Barb.* 102.)

*H. C. Ives,* for the respondent.

I. No error was committed in taking the cause from the jury. It would have been error to have allowed the case to go to them as to any question other than the value of the property, which was submitted to them. The evidence was not contradictory as to any material fact; it being conceded that the plaintiff, at the time the property was seized and taken, and at the sale, forbade the taking and sale. It is immaterial whether there had been a parol license to take the property given before the taking, as to which fact there was dispute in the evidence, as the revocation was complete at the time of the taking, and as well at the sale. The dispute in the evidence, as to the exact time when the Charley horse was sold by Mrs. Behan to the plaintiff, was immaterial, as it appeared by all the witnesses on that point, that the horse was not delivered nor title passed to the plaintiff, until at least two weeks after the making of the lease; and it was not claimed for the defendant, on the trial, that the plaintiff owned any of the property taken, actually or potentially, at the time of the execution of the lease, or entering into

McCaffrey *v.* Wooden.

possession thereunder. The only other question, on the facts of the case, was one of law, as to the validity and effect of the lien clause in the lease.

II. The lien clause in the lease was not a chattel mortgage, inasmuch as it did not transfer, nor was it intended to transfer, the title of any property, conditionally or otherwise, and the language does not import such a transfer. (*Milliman* v. *Neher*, 20 *Barb.* 37, 40. *Edgell* v. *Hart*, 5 *Seld.* 217. *Brownell* v. *Hawkins*, 4 *Barb.* 491.)

III. The lien clause, if regarded as a chattel mortgage, was absolutely void, for the following reasons: 1st. From the nature of the case, the lien created would be fluctuating and indefinite, and the mortgage would be void for uncertainty. 2d. The plaintiff was not, at the execution thereof, the owner of any of the horses in question, nor was he in possession of the land upon which the property was to be put or the crops to be raised. 3d. The cases all hold that a mortgage of personal property, neither actually nor potentially within the possession or ownership of the mortgagor, is absolutely void; and crops, such as corn and oats, are not potentially in existence until planted or sown. (*Conderman* v. *Smith*, 41 *Barb.* 404. *Otis* v. *Sill*, 8 *id.* 111. *Morrill* v. *Noyes*, 3 *Am. Law Reg. N. S.* 23.)

IV. The lien clause does not, by its language, reach nor cover the natural growth of the soil, as grass, nor the product, hay, nor the crops in question, corn and oats, but simply farm stock and implements; and this was the evident intention of the language used. If the grass was growing on the premises at the time, it was not put upon the premises by the plaintiff, and hence no lien was created.

V. The lien clause was invalid for any purpose, except that within some cases it might be deemed an executory contract for a lien as a security for rent, not creating a specific lien, but to be enforced by an equitable action, if at all. If a license, it was void, as there was nothing for it to operate upon, and was moreover an authority to dis-

McCaffrey *v.* Wooden.

train for rent. (8 *Am. Law Reg. N. S.* 611. *Otis* v. *Sill*, 8 *Barb.* 111. *Van Hoozer* v. *Cory*, 34 *Barb.* 9.)

VI. The lien clause was void as an evasion of the act abolishing distress for rent; on the ground that it is against public policy that parties shall restore by private agreement what has been prohibited as a remedy by statute. (*Van Heusen* v. *Radcliff*, 17 *N. Y.* 582.)

*By the Court,* JOHNSON, J. The action was for the taking and conversion of the personal property of the plaintiff. The defendant justified the taking by virtue of the provisions of a certain lease from Catharine Beahan to the plaintiff, which was claimed to be a chattel mortgage of the property taken, and that he was acting as the agent of the mortgagee. The provision in the lease, under which the plaintiff held the farm, was as follows: "It is agreed that the said party of the first part shall have a lien, as security for the payment of the rent aforesaid, on all goods, implements, stock, fixtures, tools, and other personal property which may be put on said premises, and such lien to be enforced, on the non-payment of the rent aforesaid, by the taking and sale of such property, in the same manner as in cases of chattel mortgage on default thereof." The property was taken in default of the payment of rent due by the terms of the lease, and consisted of hay, corn and oats, which had been raised on the premises during their occupancy, under the lease, and a pair of horses and harness. The plaintiff forbade the taking. The property was removed from the premises, and advertised and sold, as upon a chattel mortgage.

It is very clear, that this provision in the lease did not constitute a bargain and sale of the plaintiff's property, by way of mortgage or otherwise. There are no words of sale, assignment or transfer, and it is obvious that the design was, that the title should remain in the plaintiff. Indeed it is not claimed, on the part of the defendant, that

McCaffrey *v.* Wooden.

the agreement in the lease operated as a sale or transfer of title, to the landlord, even conditionally, but conferred the right to seize and sell only. It was correctly held in the case of *Milliman* v. *Neher*, (20 *Barb.* 37, 40,) that a clause like the one in question, in a lease, was not a chattel mortgage upon the property therein specified or referred to. The language is, "it is agreed" that the party of the first part "shall have a lien as security for the payment of the rent." It is equally clear that the provision did not create a lien in the eye of the law *in præsenti* upon the property specified, in favor of the landlord. A lien upon personal property, whether arising by operation of law, or from express contract, is a right of detaining the property of another until some claim is satisfied, and cannot exist without possession of the property in the person making the claim.

According to all the cases and authorities, the lien, as a legal right, ceases when possession is parted with, and cannot exist without possession. It is unnecessary to cite authorities to sustain a proposition so elementary. Here the possession was never in the lessor, until it was taken for the purpose of selling the property, and the agreement did not contemplate that it should be. The provision is clearly nothing more nor less than that the landlord should have a lien, by way of security, in future, whenever rent became due, and remained unpaid. It was an agreement to give a lien, but it did not create one. If it conferred any right upon the landlord, it was a chose in action upon the agreement, and not a chose in possession. This agreement for a lien is, however, accompanied by a license or power to enforce the right without action. This is in the nature of a power or authority to the landlord, to take and sell the plaintiff's property, on which the lien was to be given, for the purpose of obtaining payment of the rent in arrear, in the same manner as in cases of chattel mortgage, in default of payment thereon.

This is, in law, a license, which in all cases is, essentially, an authority or power to do certain acts. It is an authority, resting in contract, to the landlord to take certain property of the tenant, and sell it at public or private sale, as in the case of a chattel mortgage, upon default, and convey or transfer, in that manner, a title to the purchaser, and from the avails to satisfy the arrears of rent. But being in the nature of a license, it was revocable, and when the plaintiff forbade the taking by virtue of the lease, he revoked and put an end to the license or authority, leaving the landlord to his remedy upon the contract. Had the plaintiff not interfered, but permitted the taking and sale to go on without objection, the license or power would have been executed according to the agreement, and no right of action would have accrued to the plaintiff against any one, because the acts would have been justified by the license, and the purchaser at the sale would have acquired a good title through the exercise of the power conferred by the owner of the property, and the donor of the power. But when the plaintiff elected, as was clearly his legal right, to revoke the license or authority, and put an end to it, the landlord was remitted to his remedy by action, and cannot justify under the power, which no longer subsisted. There is but a single exception to the right of the licensor, or donor of a power, to revoke at pleasure, and put an end to it, and that is where the license or power is annexed, as an incident, to a valid grant, and its exercise is necessary to a beneficial enjoyment of the grant. As in the case of a grant of real estate, or of a right therein, or in the case of a chattel mortgage, with a power of sale therein. In such case the license is connected with the title, or the right in the property, and its exercise is necessary to the complete enjoyment or fulfillment of the right, and it cannot be revoked. But in all other cases the right of revocation is unlimited, in whatever form, and with

McCaffrey *v.* Wooden.

whatever ceremony it may have been given. The licensor may revoke at any time before execution, even after the licensee has commenced to act under the authority conferred. So far as the licensee has gone in execution of the authority, before revocation, his acts are justifiable, but his acts after that are tortious, and can derive no benefit or sanction from the revoked power. The cases upon this subject are quite numerous, but I shall cite only a few. (*Babcock* v. *Utter*, 1 *Keyes*, 115. *Ex parte Coburn*, 1 *Cowen*, 568. *Mumford* v. *Whitney*, 15 *Wend.* 380. *Jamieson* v. *Millemann*, 3 *Duer*, 255. *Tillotson* v. *Preston*, 7 *John.* 285. *Simpkins* v. *Rogers*, 15 *Ill.* 397. *Woodward* v. *Sulez*, 11 *id.* 157. *Wood* v. *Leadbitter*, 13 *Mees. & Welsb.* 838. *Bryan* v. *Whistler*, 8 *Barn. & Cres.* 288. *Hewlins* v. *Shipman*, 5 *id.* 222.) Many more cases, both American and English, might be cited to the same effect. In the cases of *Wood* v. *Leadbitter*, and *Bryan* v. *Whistler*, (*supra*,) it was held, after great consideration, that where the license had been paid for, and the licensee had entered into performance, and enjoyment under it, the licensor might revoke it without refunding the money paid, and that the right would then cease, leaving the licensee nothing but a right of action for his money. The license, or authority in the case at bar, not having been connected with any title to the property, or any right in possession, was therefore revocable at the election of the plaintiff, and when he revoked and forbade the taking and removal of the property, its removal and sale afterwards were wholly without authority, and tortious, the same as though no authority had ever been given. In the view which has been taken, it becomes wholly unnecessary to consider the question as to the rights of the landlord under the agreement, and the partial delivery and redelivery of a portion of the property afterwards taken, is wholly immaterial.

The plaintiff's title and right of possession remained

throughout as it was when the contract was made. The ruling at the circuit was therefore right, and the judgment must be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Oswego, May 7, 1872. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]