### TRAVELLERS' INS. CO. v. HEALEY et al.

(Supreme Court, Special Term, Rensselaer County. April, 1894.)

1. INTERPLEADER—WHEN LIES.

Where three persons assert claims to the proceeds of a life insurance policy, two of them claiming under assignments from the insured and the other claiming a contingent interest under the terms of the policy, the insurer may maintain a bill of interpleader against them.

2. LIFE INSURANCE—ASSIGNMENT OF POLICY.

Under Laws 1879, c. 248, providing that any policy for the benefit of the wife of the insured may be assigned with the written consent of the husband, such a policy is assignable, though it provides that, in case of the death of the wife before the husband, the insurance shall go to the children.

3. SAME—VALIDITY OF ASSIGNMENT.

Since the policy can only be assigned in writing, a mere delivery thereof by the husband and wife to secure a joint note executed by them does not transfer any interest in the policy, either by pledge or otherwise.

Action by the Travellers' Insurance Company against Ann Healey, Samuel A. Peterson, George A. Packer, Starks A. Doty, and Carrie E. Doty, in which plaintiff asks to be allowed to pay into court the amount of a policy issued by it for whoever may be entitled to it, and that the rights of defendants between themselves may be determined, and that all the defendants be restrained from proceeding against the plaintiff to recover the same.

[1] 18 N. Y. Supp. 603.

Matthew Hale, for plaintiff.
A. C. Comstock, for defendant Healey.
George R. Donnan, for defendants Peterson and Packer.
W. L. Learned, for defendants Doty.

FURSMAN, J.    On the 23d day of May, 1874, the plaintiff issued
a policy of insurance on the life of Alonzo H. Doty for $2,000, pri-
marily for the benefit of his wife, Josephine Doty.    There is, how-
ever, a provision in the policy that, in case of the death of Josephine
before Alonzo, the sum to be paid by the company shall go to their
children, if any are then living, or, if none, then to the estate of
Alonzo.    There is also the following provision:

"This policy may be converted into cash, at the option of the holder, at
any time after the expiration of fifteen years from the date hereof, for the
amount indorsed upon the back of this policy, corresponding to the age (near-
est birthday) of the insured at the time of such conversion; provided, that
this policy shall have been first paid up by the payment of ten full premiums
as herein stipulated."

Ten full premiums were duly paid, and the stipulated 15 years
expired on the 23d of May, 1889.    Alonzo became 47 years of age
in 1891, and the then value of the policy under the provision above
quoted was $740.    Alonzo and Josephine are still living, and the
defendants Starks A. and Carrie E. Doty are their infant children.
In April, 1884, Alonzo borrowed $600 of defendant Healey, for which
he and Josephine gave their joint and several note, and delivered
to Healey this policy of insurance as security.    There was at that
time no actual assignment of the policy, verbal or otherwise, made
to Healey; but the delivery accompanied the note, and was made
by Alonzo with the consent of Josephine.    The policy has ever since
remained in the possession of Healey.    Afterwards, on the 4th of
April, 1890, Alonzo and Josephine gave Healey a written assignment
of all their "right, title, claim, interest, and benefit" in and to the
policy.    The note for the payment of which Healey held this policy
as security was put into judgment April 6, 1890.    On the 29th of
October, 1886, Josephine, with the consent of Alonzo (who united
with her in the assignment), assigned the policy to defendants Peter-
son and Packer by a written assignment.    This assignment recites
an indebtedness to Peterson and Packer of $1,130.65.    On the same
day this debt was put into judgment.    About November 1, 1886,
Peterson and Packer sent to the plaintiff a copy of their assignment,
with a notice indorsed thereon indicating that they hold the original.
No other notice, nor any demand whatever for any payment on the
policy, has been made by them.    On May 24, 1890, defendant Healey
sent a letter to the plaintiff, in which she claimed that the policy
had on the 13th day of April, 1884, been verbally assigned to her to
secure the loan of $600 above mentioned, and forbidding the plaintiff
to pay the policy, or any part of it, to any person, until her claim
should be satisfied.    On the 4th of April, 1890, Hyatt & Comstock,
acting for Healey, sent to plaintiff a copy of the written assignment
to her.    No other or different claim or demand has been made by
Healey for the payment of the policy, except that on the 22d of

October, 1891, she commenced an action on the policy against the plaintiff, and in her complaint therein declares that she "elects that the same be converted into cash," as provided by the policy, and claims to recover $740.   On the 17th of November, 1890, one Peter Doty, claiming to be the guardian of the infant children of Alonzo and Josephine (the defendants Starks A. and Carrie E. Doty), sent a letter to the plaintiff, forbidding any payment to either Peterson and Packer or Healey, and asserting that the children have such an interest in the policy that it cannot properly be paid to any one until it shall be ascertained whether Josephine survives Alonzo. The complaint in this action substantially sets out these facts, and the plaintiff asks to be allowed to pay the $740 into court, or to whoever may be entitled to it, that the rights of the defendants as between themselves may be determined, and that all of the defendants be restrained from proceeding against the plaintiff to recover the same.   The defendants Doty and Peterson and Packer insist that the action cannot be maintained.   Healey and Peterson and Packer each claims to be entitled to whatever sum may be due upon the policy whenever it shall be paid; Healey, that the election permitted by the policy has been rightfully exercised by her, and that the money is now due and payable; and the defendants Doty, that they have such an interest that they may become entitled to the whole of the $2,000, and that they cannot be deprived of this interest by any assignment that Alonzo and Josephine, or either of them, might make.

I think the action may be maintained.   Although the claims of the several defendants are not precisely the same in detail, they each assert a right to the same thing, viz. to whatever sum may be realized from the policy, at whatever time it may be paid.   It is true that Healey insists that she, being entitled to do so, has exercised the election provided for in the policy, and that, therefore, $740 is immediately due, and belongs to her; while Peterson and Packer aver that she has no right of election, and that they will be entitled to receive whatever is due at any time they may choose to demand it; and the infants Doty, that their claim to the fund is such as to defeat both.   But it is nevertheless the money due or to become due upon the policy to which all lay claim.   Each asserts a right in hostility to the others, and, if they do not severally threaten an immediate action against the plaintiff, each has taken proper preliminary steps to enable an action to be brought at some future time.   They have respectively notified the plaintiff of the claim made, and each has forbidden payment to any other.   Healey has already sued.   The amount that may be recoverable upon the policy is not material. The material thing is that all the defendants make claim to the same subject-matter.   It is the policy of the law to avoid multiplicity of suits, and, where different persons claim the same money which one indebted is willing to pay to whoever may be entitled to it, he may bring an action in equity to determine their several rights, and so relieve himself from the harassment of a number of suits, and the hazard of a double recovery.   2 Story, Eq. Jur. §§ 807, 813b.   In sec-

tion 814 this learned author says that there does not seem to be any difficulty, upon principle, in maintaining that a bill of interpleader may be brought against three persons, each claiming the same property in a distinct and different right. Although the claims of the several defendants are not exactly alike, they are of the same general nature. They all grow out of the same contract upon which a liability is asserted against the plaintiff in behalf of each. The plaintiff ought not to be required to take the responsibility of deciding which of these conflicting claims is the true one, nor to be subjected to different suits, a judgment in one of which will not determine the rights of the claimant in any other. To prevent a multiplicity of suits is one of the offices of courts of equity, and to protect a party against the dangers of a double recovery is another. Board v. Deyoe, 77 N. Y. 219 (see page 224 et seq.). See, also, Crane v. McDonald, 118 N. Y. 648, 23 N. E. 991; Gaslight Co. v. McKeige, 139 N. Y. 237–239, 34 N. E. 898; and Ostrander v. Weber, 114 N. Y. 95, 21 N. E. 112.

I think, also, that the policy was assignable, notwithstanding the contingent interests of the children. Legislation on this subject has been constantly progressive. Authority for a wife to cause the life of a husband to be insured for her benefit was originally given by chapter 80 of the Laws of 1840. This act provided that, in case of the death of the wife before that of the husband, the insurance might be made payable to her children. A policy issued under that act was not assignable. Eadie v. Slimmon, 26 N. Y. 9. No material change in this law was made until chapter 821 of the Laws of 1873 was passed. By that act it was made possible for a married woman, by certain prescribed methods, to surrender such a policy to the company issuing it, and, in case she was without children, to dispose of the policy by will, or by deed executed and acknowledged in a manner sufficient to pass her dower right in lands. This, however, did not authorize or permit an assignment by a married woman having children. This was the state of the law until chapter 248 of the Laws of 1879 was enacted. This act provided that from and after its passage all policies of insurance upon the lives of husbands for the benefit of wives, whether theretofore or thereafter issued, should be assignable by the wife with the written consent of her husband, and might be surrendered to the company issuing it with the like consent. This statute seems to confer upon the wife for whose benefit her husband's life is insured the right to assign the policy where her husband consents, notwithstanding there may be children who would take in case the husband survived her. The right thus conferred is absolute. It is a present right. It is given to her as the primary beneficiary, and the enactment was evidently intended to remedy the omission of the former statute in this respect. It is true that this policy provides that, in case of the death of Josephine before Alonzo, the insurance shall go to the children, but this cannot deprive Josephine of the right which the law gives her as the wife for whose benefit the insurance is placed upon her

husband's life of assigning it with his written consent. This law applies as well to existing insurance as to that subsequently cre- ated, and effects, therefore, this policy. Unless this is so, the law is without force, for otherwise the children who might be the ultimate beneficiaries could always prevent the exercise of the right thus conferred by law. It was evidently the intent of this law to remove the disability previously existing, and to confer upon married women the right, which they had not before possessed, to assign insurance policies. This policy was, therefore, assignable. Thus it was held in Insurance Co. v. Van Campen (Sup.) 11 N. Y. Supp. 103, that the act of 1879 conferred full power upon the wife to assign, even though there were children. See page 104. See, also, Anderson v. Goldsmidt, 103 N. Y. 617, 9 N. E. 495. At page 621, 103 N. Y., and page 495, 9 N. E., the court say that the statute gives to the wife the right of assignment, whether there are chil- dren or not; and this seems to be in accordance with reason. The wife has a present estate which cannot be of any value to her unless she may dispose of it. If the children may prevent this upon the ground that there is a chance that they may some time become entitled to it, the present estate of the wife, for whose benefit the insurance is had, may be wholly defeated. The law gives her a present assignable right to the whole policy, and I think she may exercise that right without regard to those who might, by some possibility, become entitled to the fund if she did not ex- ercise it.

Having thus concluded that this policy could be assigned, the remaining question is as to whom the assignment has been properly and legally made to. Healey, in April, 1884, loaned $600 on the faith of it, but took no assignment in writing. This the law requires, or, if it does not require a written assignment of the thing itself, it requires the written consent of the husband when the wife assigns. This was not originally done. The policy was simply turned over to Healey as collateral to the note, which represented the loan then made. The most plausible argument that can be made is that the subsequent absolute assignment re- lated to the prior delivery. If this were so, it would be a mere pledge that the principal debt, evidenced by the note, would be paid; and that, in case it was not paid, the pledgee might resort to the policy for reimbursement of the loan. In that case it gave Healey the right to foreclose the claim of Josephine, and nothing more. It was a mere pledge, and gave to the pledgee only a special property in the thing pledged, the general title to which remained in the pledgor. McFarland v. Wheeler, 26 Wend. 467; Bank v. Alcott, 46 N. Y. 12 (see page 17). Her right was nothing more than to detain the policy until the note was paid. McCaffrey v. Wooden, 62 Barb. 316 (see page 323). She could not require payment of it, and, of course, could not elect that it should become immediately due. All that she could do was to foreclose her lien. But I do not think that the delivery of the policy to Healey in 1884 constituted a valid pledge. Josephine could not do

indirectly a thing which she could not do directly. As she could not transfer her title to the policy without the written consent of her husband, she could not create a special property in it without the like consent. If the subsequent written assignment to her is to be regarded as absolute, and therefore as transferring to her such title as Josephine had, it was subsequent to that of Peterson and Packer, and conveyed nothing. This latter assignment conveyed the whole title to Peterson and Packer. The original delivery of the policy to Healey did not operate as an assignment of it, because the written consent of Alonzo was lacking; and before the attempted written assignment to Healey, Josephine, with the written consent of Alonzo, had parted with her title to Peterson and Packer. Milhous v. Johnson (Sup.) 4 N. Y. Supp. 199 (see pages 201, 202); Smillie v. Quinn, 90 N. Y. 492 (see page 496). I conclude, therefore, that the assignment to Healey was invalid, and that to Peterson and Packer valid. It was not necessary that actual manual possession of the policy could be given. Baker v. Crosby (Super. N. Y.) 11 N. Y. Supp. 575. It follows that Healey had no power to elect that the policy should become immediately due, and that the money to become due upon it will belong to Peterson and Packer whenever they shall require the same.