DANZER v. NATHAN et al.

(Supreme Court, Appellate Division, Second Department. June 2, 1911.)

1. MALICIOUS PROSECUTION (§ 64*)—PROBABLE CAUSE FOR CRIMINAL PROSECUTION—EVIDENCE—SUFFICIENCY.
In an action for malicious prosecution, evidence *held* to support a finding that defendant had probable cause to procure the arrest of plaintiff.
[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 152; Dec. Dig. § 64.*]

2. BAILMENT (§ 18*)—BAILEE'S LIEN—LOSS OF LIEN.
There is no common-law lien for work, done in manufacturing materials into clothing, unless the claimant has possession, actual or constructive, of the materials, and the lien is lost by the claimant voluntarily and unconditionally parting with such possession or control.
[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 77–84; Dec. Dig. § 18.*]

3. BAILMENT (§ 18*)—STATUTORY LIEN—LOSS OF LIEN.
Under Laws 1897, c. 418, § 70, giving a person altering or enhancing the value of personalty at the request or with the consent of the owner, a lien on the article while lawfully in possession thereof, the possession of an artisan claiming such a lien must be a lawful possession, and he has the burden of proving such possession.
[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 77–84; Dec. Dig. § 18.*]

4. MALICIOUS PROSECUTION (§ 59*)—EVIDENCE—ADMISSIBILITY.
Where, in an action for malicious prosecution for the arrest of plaintiff and a third person for larceny, there was evidence of collusion between plaintiff and the third person to deprive defendant of his property, and the court charged that the jury must find a collusive arrangement between plaintiff and the third person as a basis for their finding of probable cause, the admission of evidence of conduct of the third person, prior to his sale of the property to plaintiff, to show a purpose to secrete the property and defeat its return under civil process, was not erroneous.
[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 125–137; Dec. Dig. § 59.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. CONSPIRACY (§ 47*)—CRIMINAL CONSPIRACY—EVIDENCE—ADMISSIBILITY.

A criminal conspiracy may be proved by circumstantial evidence, and such evidence, if sufficiently strong, may outweigh the positive statement of a party or a witness.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

6. CRIMINAL LAW (§ 427*)—CRIMINAL CONSPIRACY—ACTS OF CONSPIRATORS—ADMISSIBILITY.

· In criminal conspiracy, it is not necessary to prove the fact of conspiracy before proving the acts of the alleged conspirators, for the acts may establish a conspiracy.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1012–1017; Dec. Dig. § 427.*]

7. MALICIOUS PROSECUTION (§ 24*)—PROBABLE CAUSE.

That criminal proceedings before a magistrate resulted in the holding of accused unqualified by other evidence and unexplained may establish a prima facie case of probable cause for the prosecution, defeating an action for malicious prosecution.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 49–55; Dec. Dig. § 24.*]

8. MALICIOUS PROSECUTION (§ 72*)—EVIDENCE—INSTRUCTIONS.

An instruction in an action for malicious prosecution that the jury may find a want of probable cause from the fact that the criminal prosecution against plaintiff instituted by defendant resulted in favor of plaintiff, is erroneous because ignoring affirmative evidence of probable cause, and permitting the jury to act merely on a prima facie case, unaffected by such evidence.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 168–173; Dec. Dig. § 72.*]

Appeal from Trial Term, Kings County.

Action by Gustav Danzer against Arthur J. Nathan and others. From a judgment for defendants and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Charles G. F. Wahle, for appellant.

Emanuel J. Myers (Gordon S. P. Kleeberg, on the brief), for respondents.

BURR, J. The action is for malicious prosecution. From a judgment entered upon a verdict in favor of the defendants and from an order denying a motion for a new trial, this appeal is taken.

There was a sharp conflict in the evidence. It is impossible to conclude that such conflict arose from honest mistake. Some of the witnesses were clearly guilty of perjury. We are not prepared to say that the jury were not justified in accepting as credible the testimony offered on behalf of the defendants.

[1] From the evidence in the case, the jury were justified in finding the following facts: Defendants were manufacturers of clothing, furnishing the material cut and ready to be put together. Such material was delivered to a firm of contractors known as Cohen & Cohen to complete. These manufacturers caused a part of the buttonholes to be made by their own employés, and delivered a part, for a similar

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

purpose, to Samuel Schwartz, known as a buttonhole maker. One evening in the latter part of October, 1906, Abraham Cohen, one of the firm of contractors, absconded. His partner, also named Abraham Cohen, remained. On the morning after the former Cohen departed, different work people employed by the firm went to the loft occupied by them, gathered up the goods that were there, and carried them away, apparently to secure their respective claims. Among others was Samuel Schwartz and his assistant, the man who usually carried the goods back and forth between the loft of Cohen & Cohen and Schwartz's shop. Although contradicted, several witnesses for the defendant testified that at the close of each day Schwartz was required to return the coats that he had taken during the day. The reason for this requirement was on account of the insurance. There was also testimony that the evening before Cohen absconded all of the coats which Schwartz had taken had been returned to Cohen & Cohen. After the day in question, 57 coats which had at some time been taken from Cohen & Cohen's loft were found in Schwartz's possession, some of them completed except for the buttonholes, and some of them incomplete to the extent that there were no sleeves in them. There was also testimony, also contradicted, that it was not the custom to send coats for the purpose of having the buttonholes made until all the other work upon the coats had been done. It does not clearly appear that Schwartz had done work on all of these coats.

The fact that Schwartz and his carrier had forcibly taken away these coats on the morning in question was communicated to one of the defendants. Negotiations then began for a return of 24 of the coats which belonged to defendants. A short time after, variously stated as from three days to a week, another contractor whose coats had also been taken went to Schwartz and asked for the coats, and was then informed by him that he did not have the coats, that they were across the way in the tailor shop. Danzer, the plaintiff, conducted a tailor shop in the same building with Schwartz and on the opposite side of the hall. Demand was then made for the return of the coats taken away from the person in charge of the tailor shop, who refused to deliver them unless $3 or $4 was paid for each coat. Schwartz claimed that the firm of Cohen & Cohen were indebted to him for work previously done by him in about the sum of $200. It was conceded that the cost and value of the work of making buttonholes upon the 24 coats which belonged to the defendant, as well as upon those belonging to other contractors, did not exceed in amount the sum of $3.

On December 5th a summons was issued by a Magistrate's Court, at defendants' request, directed to Schwartz. He appeared, and the suggestion was then made that a suit in replevin should be instituted by defendants to recover the coats. There was testimony that such proceedings were instituted, but the marshal to whom the writ was delivered was unable to find the coats. Subsequently, and on the 9th of January, 1907, another summons was issued, addressed to Schwartz, in connection with the same matter, and, although the parties appeared, nothing was accomplished in securing a settlement of their conflicting claims.

In the latter part of November, Schwartz, acting under the advice of an attorney, prepared a notice, asserting that he had a lien on the coats in his possession for the sum of $201.52, and requiring the owners of such property to pay the same on or before the 10th of December, 1906. The notice also contained a statement that, in default of such payment, the property would be sold at public sale at Schwartz's place of business on the (blank) day of December, 1906. This notice was addressed to some of the other owners of the property, but was not addressed to the defendants. It appears, however, that a copy of this notice, served upon one of the other owners, was brought to defendants' attention. Subsequently, and on the 17th and 24th days of December, 1906, a copy of the notice, with a date of sale inserted (December 26th), was published in the New York Times. There was testimony that defendants sent two of their employés on the 26th of December to Schwartz's place of business, and was then informed that the sale had been postponed for a week. On the adjourned day one of them attended again, and, although they remained about the premises for some time, they testified that no sale took place, nor could they obtain any definite information respecting it. Plaintiff, on the contrary, testified that the goods were offered for sale at public auction in Schwartz's shop on the adjourned day by one of the attorneys for Schwartz; that, although he knew nothing of the circumstances connected with the acquiring of the goods by Schwartz, he happened to stop in at the exact moment and bought the 57 coats for $50. There was evidence tending to confirm his testimony and contradict that of defendants' employés. Thereafterward they were found in plaintiff's possession, and he again refused to deliver them up unless the sum of $3 was paid to him for each coat. The defendants then went to the district attorney's office, and consulted one of the assistants in charge. He communicated with Schwartz and Danzer, and endeavored to persuade them to deliver up the coats to the defendants. They refused so to do. Thereafter, upon his advice, the defendants went before a magistrate and swore out a warrant for the arrest of Schwartz and Danzer for larceny, and they were arrested. Upon the hearing before the magistrate they were discharged. "A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, * * * (1) takes from the possession of the true owner, or of any other person; * * * or secretes, withholds, or appropriates to his own use, or that of any person other than the true owner, any * * * personal property, * * * steals such property, and is guilty of larceny." Pen. Code, § 528.

The learned trial judge charged the jury, in substance, that if Schwartz took the material and made the buttonholes and then delivered the material back to the original contractors, and one of the contractors absconded after the coats had been out of the possession of Schwartz, after he had relinquished any lien that he had upon them, and if Schwartz then went to the shop of the contractor, retook possession of the coats, and brought them back to his own place, insist-

ing upon a lien which he had lost by the delivery of possession, and made a claim in a larger amount than he was entitled to even if he had a lien, if he acted evasively and suspiciously and sold the goods at a sham auction, conducted by his own counsel, and gave no information to the defendants as to the time or place of sale upon inquiry, served no notice upon them, gave a notice to others which had the date of the sale eliminated, if the auction was a sham, fraud, and device to deprive defendants of their property, and Schwartz sold them to a man who had a place of business upon the same floor, in the same building with himself, if the defendants believed all these things to be true, they had probable cause to charge the plaintiff in this action, the person who bought the coats, with the crime of larceny. And he further charged that if the pretended sale was but a ruse, device, or scheme to change possession of the property and make it more difficult for the defendants to obtain their property by civil process, and Danzer was part of that arrangement, confederating with Schwartz to accomplish that purpose, if those facts were proven by a fair preponderance of evidence, and if they believed that to be the state of facts in the case, then the defendants had a probable cause to procure the arrest of Danzer.

This charge, we think, accurately stated the question of fact to be submitted to the jury, and correctly instructed them as to the law. The crucial question in the case was emphasized by a further charge made at the request of plaintiff's attorney, to the effect that:

"If they find that Schwartz had not delivered the coats in question to Cohen & Cohen on the morning that Cohen absconded, and that he had a lien and in good faith asserted that lien, and that the auction sale took place in an endeavor to foreclose his lien, and that Danzer purchased these coats at that auction sale, and these facts were known to the defendants in this action, then there was no probable cause for the arrest of the plaintiff."

The court charged the request, with the addition: "And Schwartz and Danzer acted in good faith." The original charge and the request, as modified, were satisfactory to plaintiff's counsel, for no exception was taken thereto. Plaintiff's request was doubtless made in consideration of the provision of the statute that:

"Upon an indictment for larceny it is a sufficient defense that the property was appropriated openly and avowedly, under a claim of title preferred in good faith, even though such claim is untenable." Pen. Code, § 548.

The question of good faith was fairly submitted to the jury, and their verdict establishes the absence thereof. If, as the jury must have found, Schwartz had parted with possession of the goods before Cohen absconded, he had no lien either at common law or under the statute.

[2] At common law:

"It is indispensable to the existence of such a lien that the claimant should have an independent and exclusive possession, actual or constructive, of the property." 25 Cyc. 671; McFarland v. Wheeler, 26 Wend. 467; McCaffrey v. Wooden, 62 Barb. 316.

"As a general rule, a common-law * * * lien dependent upon possession is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches, and such lien cannot be restored thereafter by resumption of possession." 25 Cyc. 675; Sensenbrenner v. Mathews, 48 Wis. 250, 3 N. W. 599, 33 Am. Rep. 809.

And at common law the right of lien does not exist even though the goods are in the possession of the lienor, if such possession is not properly acquired or retained. 25 Cyc. 671; Allen v. Megguire, 15 Mass. 490; Randel v. Brown, 2 How. 406, 424, 11 L. Ed. 318.

[3] The statute declares that:

"A person who makes, alters, repairs, or in any way enhances the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid." Laws 1897, c. 418 (Gen. Laws, c. 49) § 70.

But an artisan's lien under the statute must also be a lawful possession, and the burden of proof of showing such possession is on the lienor. O'Clair v. Hale, 35 App. Div. 77, 54 N. Y. Supp. 388; Wiles Laundry Co. v. Hahlo, 105 N. Y. 234, 11 N. E. 500, 59 Am. Rep. 496; Smith v. O'Brien, 46 Misc. Rep. 325, 94 N. Y. Supp. 673.

It is not necessary to consider the regularity of the proceedings in connection with the alleged sale, for the jury have found, and the evidence warrants the finding, that such sale was not a bona fide one.

[4] Plaintiff contends, however, that as against him evidence of prior conduct on the part of Schwartz and his employés and of prior proceedings tending to show a purpose upon his part to secrete the property and defeat the return of the coats through civil process was improper. We think the point is not well taken. The jury were clearly instructed that they must find a collusive arrangement between Danzer and Schwartz as the basis for their finding of probable cause upon the part of the defendants. It is true that Danzer denied any knowledge of the preceding transactions between the defendants and Schwartz. There was evidence tending to contradict this, partly direct and partly circumstantial, the substance of which has been detailed.

[5] But a criminal conspiracy may be proved by circumstantial evidence alone. People ·v. Peckens, 153 N. Y. 576, 47 N. E. 883; People v. McKane, 143 N. Y. 455, 38 N. E. 950; Kelley v. People of the State of N. Y., 55 N. Y. 576, 14 Am. Rep. 342. Circumstantial evidence, if sufficiently strong, may outweigh the positive statement of a party or a witness.

[6] In the case of a criminal conspiracy, it is not necessary to prove the fact of the conspiracy before showing the acts of the alleged conspirators. The acts of different persons may be proved and the conspiracy thereby established. People v. Miles, 123 App. Div. 862, 108 N. Y. Supp. 510, affirmed 192 N. Y. 541, 84 N. E. 1117.

The only remaining point which we deem necessary to consider is presented by plaintiff's exception to a request to charge. The court was asked to charge:

"That the jury have a right to find from the fact that the criminal prosecution against the plaintiff, instituted by the defendants, resulted in favor of the plaintiff, that there was a want of probable cause for the institution of the criminal prosecution against the plaintiff."

The request was properly refused.

[7] Where the proceedings before the magistrate resulted in holding the plaintiff, this fact, unqualified as to its effect by other evidence,

and unexplained, might establish a prima facie case of the existence of probable cause. Burt v. Smith, 181 N. Y. 7, 73 N. E. 495; Schultz v. Greenwood Cemetery, 190 N. Y. 276, 83 N. E. 41. But it by no means follows that the converse would be the case.

[8] In any event, this request goes so far as to ask that the jury be instructed that they might find want of probable cause from that fact alone, without regard to the other evidence in the case. It has been held that, notwithstanding the criminal proceedings were dismissed, if evidence was introduced on the part of the defendant showing that the crime charged was actually committed, such evidence, if credible, is a complete defense to the action. Barber v. Gould, 20 Hun, 446; Turner v. Dinnegar, 20 Hun, 465; George v. Johnson, 25 App. Div. 125, 49 N. Y. Supp. 203. The request to charge was faulty, in that it sought to withdraw from the jury the consideration of the other evidence in the case and permit them to act merely upon a prima facie case unaffected thereby. Platt v. Bonsall, 136 App. Div. 397, 120 N. Y. Supp. 983.

The judgment and order should be affirmed, with costs. All concur.