(156 App. Div. 756.)

## PEOPLE v. MICELLI.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

1. KIDNAPPING (§ 1*)—NATURE OF OFFENSE.

The offense of kidnapping, denounced by Penal Law (Consol. Laws 1909, c. 40) § 1250, making it a felony to entice away or detain a child with intent to conceal him from his parents and extort a reward, is a continuing one, which extends from the time of the taking of the child until the obtaining of the reward.

[Ed. Note.—For other cases, see Kidnapping, Cent. Dig. §§ 1–7; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 3928, 3929.]

2. CRIMINAL LAW (§ 423*)—EVIDENCE—ACTS AND DECLARATIONS OF CO-CONSPIRATORS.

In a prosecution for kidnapping a minor child for purposes of extortion, where the successful accomplishment of the crime necessitated a

---

confederation of several persons, defendant securing the child and the others writing threatening letters and collecting the ransom, evidence of the acts and declarations of defendant's co-conspirators are admissible in evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 989–1001; Dec. Dig. § 423.*]

3. INDICTMENT AND INFORMATION (§ 169*)—ISSUES AND PROOF—DECLARATIONS AND ACTS OF CO-CONSPIRATORS.

In a prosecution for kidnapping a minor child for the purpose of extorting a ransom, evidence of the acts and declarations of accused's co-conspirators is admissible, though the indictment charged no conspiracy; for the conspiracy was essential to the successful accomplishment of the crime, and therefore the acts and declarations of defendant's co-conspirators are admissible to show the crime and the conspiracy.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 320, 535; Dec. Dig. § 169.*]

Appeal from Court of General Sessions, New York County.

Vito Micelli was convicted of kidnapping, and he appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Giuseppe L. Maggio, of New York City (Rosario Maggio, of New York City, of counsel), for appellant.

Charles S. Whitman, Dist. Atty., of New York City (Robert S. Johnstone, of New York City, of counsel, and Charles F. Bostwick, of New York City, on the brief), for the People.

CLARKE, J. Appellant was convicted of the crime of kidnapping. The indictment, drawn under section 1250 of the Penal Law (Consol. Laws 1909, c. 40), is in two counts, for leading, taking, enticing away, and detaining a child of the age of three years with intent to keep and conceal him from his parents; and, second, with intent to extort or obtain money and reward for the return of said child.

The little boy was the son of an Italian physician, Dr. Scimeca, who resided at No. 2 Prince street. The child was taken on the street on the 21st of June, 1910. The defendant was sufficiently identified as the person who took the child by two schoolgirls, who were eyewitnesses, and by the statements made by the defendant to the police officers who arrested him. They testified that on the street he offered $5 to be let go; that when he asked, "What are you arresting me for?" he was told:

" 'We are arresting you for kidnapping Dr. Scimeca's child last June, a year ago.' He looked, and his eyes filled up. He said, 'All I know about Dr. Scimeca's child is I seen him on Elizabeth street; he was crying;' and he said, 'I thought he was lost, and I took him by the hand, and I walked him up to Bleecker street; when I got to Bleecker street a man came along and said to me, "Where are you going with the boy?" I said, "I thought he was lost;" and the man said, "Give him to me;" and the man took the child from me.' "

The policeman continued:

"I says, 'How do you know it was Dr. Scimeca's boy?' He said, 'Well, I heard afterwards that it was Dr. Scimeca's boy.' 'Now,' he says, 'that is all I know about it. Here is $100; take it. It won't do you no good to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

send me to prison.' * * * And the next morning he said, 'Take this $100 and this jewelry, and go to court and have me discharged.' He says, 'You might as well have it as the lawyers;' * * * and he says, 'I have got some other property in Italy; if you let me go, I am willing to be a pauper, if you let me go.' "

About 9 o'clock on the evening of September 8, 1910, Dr. Scimeca, in response to a telephone message received the day before, and according to its instructions, went over to Brooklyn to the park between Flushing and Park avenues near Navy street, with $1,700 in an envelope, which he gave to a man who said: "Good evening, Dr. Scimeca." The next night after the payment of the money the child was returned. Its grandmother, on a telephonic message, had gone in a carriage to East Fifty-Fifth street, between First and Second avenues, borough of Manhattan, arriving there about midnight. She found the child on the sidewalk alone. There was sufficient evidence to support the verdict of the jury so far as concerns the taking of the child by the defendant.

There were received in evidence a number of threatening and abusive letters received by Dr. Scimeca, which began the day after the taking of the child and continued down to the time of its return. They said the writers had the child in their possession; that he was sick, and might die. They threatened his death if instructions were not followed and money paid as directed, and promised to return him on performance thereof. There was also received evidence of telephonic messages to Dr. Scimeca containing threats and instructions. Said messages referred to the letters, and the letters also referred to the telephonic messages. It is not claimed that these letters were written by the defendant, or that the telephone messages emanated from him. No attempt was made to trace either set of communications to him personally. The receipt in evidence of these oral and written communications is the ground upon which this court is asked to reverse this judgment.

[1] The crime for which the defendant was indicted, namely, kidnapping, was a continuing crime. It was for leading, taking, and enticing away and detaining a child under the age of 16 years, with intent to extort or obtain money and reward for his return. The perpetration of the crime began by the taking of the child on the 21st of June by the defendant in person, was continued by his detention until the 9th of September, and was ended by his return on said date; the purpose for which the crime had been committed having been accomplished by the payment of $1,700 by his father on the previous night.

[2] It is obvious that the successful accomplishment of such a crime necessitated the confederation or conspiracy of several persons. The defendant was clearly responsible for the acts of his co-conspirators committed during the continuance of the crime—that is, the period of detention of the child—in the furtherance of the common purpose and with the common design to extort moneys by said detention. The letters and communications, which began immediately upon the taking of the child, continued throughout its detention, and ceased upon its return, were *acts done in furtherance of the common design,*

for which he was responsible, and were therefore admissible in evidence against him.

[3] It is true that he was not indicted for conspiracy. In People v. McKane, 143 N. Y. 455, 38 N. E. 950, it was said:

"No conspiracy was charged in the indictment, nor was it necessary, since the conspiracy, if shown, was evidence in support of the charge stated, from which the jury might find the main fact in issue. * * * When a conspiracy is shown, or evidence on the subject given sufficient for the jury, then the acts and declarations of the conspirators, in furtherance of its purpose and object, are competent, and in a case like this it is not necessary, in order to make such proof competent, that the conspiracy should be charged in the indictment."

To the same effect, People v. Putnam, 90 App. Div. 125, 85 N. Y. Supp. 1056, affirmed on opinion below 179 N. Y. 518, 71 N. E. 1135.

In People v. Adrogna, 139 App. Div. 595, 124 N. Y. Supp. 68, defendant was convicted on an indictment for extortion. The court said:

"There is no direct evidence that the defendant wrote the letters, or any of them, and for this reason it is urged that the defendant could not be convicted under the indictment charging extortion by means of threats that the defendant would kill Scarito. But he could be convicted under the indictment, not only if he wrote the letters himself, but also if he acted in conjunction with those who did write them."

In People v. Campisi, 145 App. Div. at page 266, 129 N. Y. Supp. at page 976, it is said:

The facts "disclose the situation, which has now become familiar, of the kidnapping of the child, the sending of threatening letters to the parents demanding money, or, as an alternative, the death of the child, the appearance of a person, following the receipt of the letters, who claims to know the child's whereabouts, and, if the money is paid over, the return of the child. * * * Defendant * * * claims never to have seen the letters in question. * * * Upon the testimony they might properly have found either that the threatening letters had been sent under the direction of defendant, if he did not write them, or that he was acting in conjunction with those who did write them. In either event he would have been guilty of extortion."

In People v. Hall, 51 App. Div. 57, 64 N. Y. Supp. 433, Spring, J., said:

"It is contended on behalf of the defendant that it was error to receive evidence of the transactions or statements of the original codefendants occurring after June 21st. The evidence justifies the conclusion that these men were engaged jointly with a concerted purpose to filch money from the complainant. This did not relate solely to the specific offense set out in the indictment, but it was a continuing design to blackmail, and that was carried on after June 21st. It was during the execution of this fell purpose that the acts and declarations now complained of were done or uttered. It is elementary that the declarations of each conspirator are admissible against his confederates, when they were made during the execution and in furtherance of their common design. 1 Greenl. Ev. (16th Ed.) 184; People v. Peckens, 153 N. Y. 576, 595 [47 N. E. 883]. The extortion of the money charged in the indictment was one fact, one element, in the general purpose to wrest money from Oberholzer. These conspirators continued to carry out this purpose for several days after the act of extortion, which is the subject-matter of the indictment. Whatever they did, although after this specific offense, during this period, is in the fulfillment of their design, and is admissible against each one who is proved to be a confederate. * * * Fitzgerald's connection with the scheme is shown by abundant evidence, so that his letter comes within the rule stated."

In Roscoe's Criminal Evidence (12th Ed.) page 372, and in Russell on Crimes (6th Ed.) vol. 1, page 535, it is said:

" * * * The prosecutor may either prove the conspiracy which renders the acts of the conspirators admissible in evidence, or he may prove the acts of the different persons, and thus prove the conspiracy.".

"Upon an indictment for conspiracy, the evidence is either direct of a meeting and consultation for the illegal purpose charged, or more usually, from the very nature of the case, circumstantial. 2 Stark. on Ev. (2d Ed.) 232; R. v. Cope, 1 Str. 144. * * * If on a charge of conspiracy it appears that two persons by their acts are pursuing the same object, and often by the same means, the one performing part of an act and the other completing it, for the attainment of the object, the jury may draw the conclusion that there is a conspiracy." Roscoe's Crim. Ev. (12th Ed.) p. 373.

The text-writers are in accord. Underhill on Crim. Ev. (2d Ed.) § 491; Phipson on Ev. (4th Ed.) 77; Greenleaf on Ev. (16th Ed.) vol. 3 § 93 (quoted with approval in Spies v. People, 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320); Wharton, Crim. Ev. (10th Ed.) vol. 2, § 888, also p. 1432; Russell on Crimes (6th Ed.) vol. 1, p. 533.

"A conspiracy may be proved, as other facts are proved by circumstantial evidence, and parties performing disconnected overt acts, all contributing to the same result and the consummation of the same offense, may, by the circumstances and their general connection or otherwise, be satisfactorily shown to be conspirators and confederates in the commission of the offense." Kelly v. People, 55 N. Y. 565, 576, 14 Am. Rep. 342.

Upon the same point, People v. Peckens, 153 N. Y. 576, 47 N. E. 883; People v. Van Tassel, 156 N. Y. 561, 51 N. E. 274; People v. Miles, 123 App. Div. 862, 108 N. Y. Supp. 510; affirmed 192 N. Y. 541, 84 N. E. 1117; Danzer v. Nathan, 145 App. Div. 448, 455, 129 N. Y. Supp. 966.

I am of the opinion, it having been satisfactorily established that the defendant personally abducted the child, that the court properly received in evidence the communications of both kinds thereafter received, followed as they were by the delivery of the child in accordance with the fulfillment of the promise made upon the payment of the money. The letters and statements tended to prove the reason and intent of the detention. They were naturally and logically connected with the original abduction. They were as competent, it seems to me, as was the proof of the payment of money to the unknown man in Brooklyn, as a consequence of which alone the child was restored.

We discover no error in this record requiring reversal, and the judgment appealed from is therefore affirmed. All concur.